IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Assiniboine & Sioux Tribes of the Fort Peck Indian Reservation v. Norton, *et al.*, | ) | Civil Action No. 02-0035 (JR) |
| Standing Rock Sioux Tribe v. Norton, *et al.*, | ) | Civil Action No. 02-0040 (JR) |
| Three Affiliated Tribes of the Fort Berthold Reservation v. Norton, *et al.*, | ) | Civil Action No. 02-0253 (JR) |
| Shoshone-Bannock Tribes of the Fort Hall Reservation v. Norton, *et al.*, | ) | Civil Action No. 02-0254 (JR) |
| Chippewa Cree Tribe of the Rocky Boy's Reservation v. Norton, *et al.*, | ) | Civil Action No. 02-0276 (JR) |
| Yankton Sioux Tribe v. Norton, *et al.*, | ) | Civil Action No. 03-1603 (JR) |
| Osage Tribe of Indians of Oklahoma v. United States of America, *et al.*, | ) | Civil Action No. 04-0283 (JR) |
| Crow Creek Sioux Tribe v. Kempthorne, *et al.*, | ) | Civil Action No. 04-0900 (JR) |
| Omaha Tribe of Nebraska v. Kempthorne, *et al.*, | ) | Civil Action No. 04-0901 (JR) |
| Oglala Sioux Tribe v. Kempthorne, *et al.*, | ) | Civil Action No. 04-1126 (JR) |
| The Confederated Tribes of the Colville Reservation v. Norton, *et al.*, | ) | Civil Action No. 05-2471 (JR) |
| Wyandot Nation of Kansas v. Kempthorne, *et al.*, | ) | Civil Action No. 05-2491 (JR) |
| Rosebud Sioux Tribe v. Kempthorne, *et al.*, | ) | Civil Action No. 05-2492 (JR) |
| Winnebago Tribe of Nebraska v. Kempthorne, *et al.*, | ) | Civil Action No. 05-2493 (JR) |
| Lower Brule Sioux Tribe v. Kempthorne, *et al.*, | ) | Civil Action No. 05-2495 (JR) |
| Prairie Band of Potawatomi Nation | ) | Civil Action No. 05-2496 (JR) |

| | | |
|---|---|---|
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Te-Moak Tribe of Western Shoshone Indians v. Norton, *et al.*, | ) ) | Civil Action No. 05-2500 (JR) |
| | ) | |
| Cheyenne River Sioux Tribe v. Kempthorne, *et al.*, | ) ) | Civil Action No. 06-1897 (JR) |
| | ) | |
| Stillaguamish Tribe of Indians v. Kempthorne, *et al.*, | ) ) | Civil Action No. 06-1898 (JR) |
| | ) | |
| Iowa Tribe of Kansas and Nebraska v. Kempthorne, *et al.*, | ) ) | Civil Action No. 06-1899 (JR) |
| | ) | |
| Confederated Tribes of the Goshute Reservation v. Kempthorne, *et al.*, | ) ) | Civil Action No. 06-1902 (JR) |
| | ) | |
| Muskogee (Creek) Nation of Oklahoma v. Kempthorne, *et al.*, | ) ) | Civil Action No. 06-2161 (JR) |
| | ) | |
| Eastern Shawnee Tribe of Oklahoma v. Kempthorne, *et al.*, | ) ) | Civil Action No. 06-2162 (JR) |
| | ) | |
| Northwestern Band of Shoshone v. Kempthorne, *et al.*, | ) ) | Civil Action No. 06-2163 (JR) |
| | ) | |
| Red Cliff Band of Lake Superior Indians Indians v. Kempthorne, *et al.*, | ) ) | Civil Action No. 06-2164 (JR) |
| | ) | |
| Pechanga Band of Luiseno Mission Indians v. Kempthorne, *et al.*, | ) ) | Civil Action No. 06-2206 (JR) |
| | ) | |
| Colorado River Indian Tribes v. Kempthorne, *et al.*, | ) ) | Civil Action No. 06-2212 (JR) |
| | ) | |
| Tohono O'Odham Nation v. Kempthorne, *et al.*, | ) ) | Civil Action No. 06-2236 (JR) |
| | ) | |
| Nez Perce Tribe, *et al.*, v. Kempthorne, *et al.*, | ) ) | Civil Action No. 06-2239 (JR) |
| | ) | |
| Passamaquoddy Tribe of Maine v. Kempthorne, *et al.*, | ) ) | Civil Action No. 06-2240 (JR) |
| | ) | |
| Salt River Pima-Maricopa Indian Community v. Kempthorne, *et al.*, | ) ) | Civil Action No. 06-2241 (JR) |

| | | |
|---|---|---|
| Coeur D'Alene Tribe v. Kempthorne, *et al.*, | ) | Civil Action No. 06-2242 (JR) |
| Ak-Chin Indian Community v. Kempthorne, *et al.*, | ) | Civil Action No. 06-2245 (JR) |
| Sokaogon Chippewa Community v. Kempthorne, *et al.*, | ) | Civil Action No. 06-2247 (JR) |
| Gila River Indian Community v. Kempthorne, *et al.*, | ) | Civil Action No. 06-2249 (JR) |
| Northern Cheyenne Tribe of Indians v. Kempthorne, *et al.*, | ) | Civil Action No. 06-2250 (JR) |
| Haudenosaunee and The Onondaga Nation v. Kempthorne, *et al.*, | ) | Civil Action No. 06-2254 (JR) |

**NOTICE OF FILING CORRECTED AND ELECTRONICALLY REFORMATTED DECLARATION OF CECILIA MARTINEZ IN SUPPORT OF DEFENDANTS' MOTION FOR REMAND AND TEMPORARY STAY OF LITIGATION**

On November 21, 2007, Defendants filed their memorandum of points and authorities and other papers in reply to Plaintiffs' memoranda in opposition to Defendants' motion for remand and temporary stay of litigation. Defendants' reply papers included the declaration of Cecilia Martinez, which was submitted in two parts (because of its size).

Based on communications between the office of Defendants' counsel and the United States District Court Clerk's Office, Defendants' counsel learned after the filing that a technical glitch in the electronic court filing (ECF) of the Martinez declaration resulted in the failure of the ECF system to stamp the entire declaration, as needed. Also, Defendants' counsel discovered that two pages of the Martinez declaration had been omitted inadvertently during the process of preparing, transmitting, and finalizing the declaration for filing.

Defendants hereby give notice that they are filing a corrected and electronically reformatted version of the Martinez declaration. They regret any inconvenience to the Court and

Plaintiffs as a result of the inadvertent and technical errors.

Respectfully submitted this 30th day of November, 2007,

RONALD J. TENPAS
Acting Assistant Attorney General

*/s/ Kevin Regan*
KEVIN REGAN
KEVIN J. LARSEN
JENNIFER L. ALLAIRE
LAURA MAROLDY
CAROL DRAPER
JASON M. BRUNO
E. KENNETH STEGEBY
MAUREEN E. RUDOLPH
JOHN H. MARTIN
MATTHEW M. MARINELLI
ANTHONY P. HOANG
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-3022
Tel: (202) 305-0258
Tel: (202) 305-0456
Tel: (202) 514-4565
Tel: (202) 305-0465
Tel: (202) 305-0434
Tel: (202) 616-4119
Tel: (202) 305-0479
Tel: (303) 844-1383
Tel: (202) 305-0293
Tel: (202) 305-0241
Fax: (202) 353-2021

OF COUNSEL:

LAWRENCE JENSEN
PAUL SMYTH
THOMAS BARTMAN
ELISABETH BRANDON
GLADYS COJOCARI
SHANI WALKER
Office of the Solicitor

United States Department of the Interior
Washington, D.C.  20240

TERESA E. DAWSON
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C.  20227

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 30, 2007, I electronically transmitted the foregoing NOTICE OF FILING CORRECTED AND ELECTRONICALLY REFORMATTED DECLARATION OF CECILIA MARTINEZ IN SUPPORT OF DEFENDANTS' MOTION FOR REMAND AND TEMPORARY STAY OF LITIGATION to the Clerk of the Court, using the ECF system for filing, and caused the ECF system to transmit a Notice of Electronic Filing to the counsel of record listed on the ECF system for this case.

*/s/Kevin Regan*
KEVIN REGAN

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AK CHIN INDIAN COMMUNITY,

Plaintiff,

v.

DIRK KEMPTHORNE, et al.,

Defendants.

Civil Action No. 1:06CV02245 (JR)

**DECLARATION OF CECILIA MARTINEZ**
**IN SUPPORT OF DEFENDANTS' MOTION FOR VOLUNTARY REMAND**

Pursuant to 28 U.S.C. section 1746, I, Cecilia Martinez, declare as follows:

1. I am the Superintendent of the Bureau of Indian Affairs (BIA) Pima Agency, which is located in Sacaton, Arizona. I have held this position since April 2006, and I have been employed by the Department of the Interior, Bureau of Indian Affairs (BIA) since June 1986.

2. Attached as Exhibit A are true and correct copies of some of the 2005-2007 correspondence between the BIA Pima Agency and the Ak-Chin Indian Community.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief, and that this declaration was executed on November 20, 2007.

Cecilia Martinez

CECILIA MARTINEZ



United States Department of the Interior
BUREAU OF INDIAN AFFAIRS
PIMA INDIAN AGENCY
P.O. BOX 8
SACATON, ARIZONA 85247

IN REPLY:
Branch of Real Estate Services
Telephone: 520-562-3376/3377
FAX Number: 520-562-1260

MAR 0 8 2007

Ms. Delia M. Carlyle, Chairman
Ak-Chin Indian Community
42507 W. Peters & Nall Road
Maricopa, Arizona 85239

Dear Ms. Carlyle:

This is in response to your letter dated February 22, 2007, requesting technical assistance from our office.

Our office has requested an appraisal for the property which was leased by Renal West Care Group, in Lot 68, Section 33, Township 4 South, Range 3 East of the Gila and Salt River Base and Meridian, Pinal County, Arizona, containing 1.0 acres more or less, dated March 1, 2007. We have enclosed a copy of the appraisal request, and a copy of the uncertified title status report, for your information.

In response to your question regarding agreements in duration of seven (7) years or more, 25 U.S.C. § 81 (b) requires that *"No agreement or contract with an Indian tribe that encumbers Indian lands for a period of seven (7) or more years shall be valid unless that agreement or contract bears the approval of the Secretary of the Interior or a designee of the Secretary."*

If you have any questions or wish to discuss this matter further, please contact either the Superintendent's office at (520) 562-3326 or Larry McKeighen, Acting Realty Officer at (520) 562-3376.

Sincerely,

/S/ JAY DANIELS

ACTING Superintendent

Enclosures

Realty Chrono
Superintendent Chrono
Case Chrono

hhunt/hh: 03/07/2007



**United States Department of the Interior**
BUREAU OF INDIAN AFFAIRS
PIMA AGENCY
P.O. BOX 8
SACATON, ARIZONA 85247

IN REPLY
Branch of Real Estate Services
Telephone: 520/562-3376/3377
FAX Number: 520/562-1280

FEB 0 8 2007

Strickland & Strickland
Attn: Mr. Robert F. Palmquist
4400 East Broadway, Suite 700
Tucson, Arizona 85711-3517

Dear Mr. Palmquist:

In response to your letter dated January 25, 2007, regarding an application for a right-of-way (ROW) between the Ak-Chin Indian Community and ED3, we hope to clarify the process for obtaining a completed ROW by identifying what is required.

1. Provide written consent of landowner (ROW Form 97-7). A tribal Resolution can suffice for tribal lands.

2. Plat Map(s) of definite location (2 original mylars and 2 copies. See 25 CFR § 169.6, 169.7, 169.8, 169.9, 169.10 and 169.11). Copies can suffice in this instance.

3. Deposit of estimated damages or compensation (See 25 CFR § 169.4 and 169.14).

4. Evidence of Authority of Officers to Execute Papers (ROW Form 94-4).

5. For corporation or business, requirements of 25 CFR § 169.4 and 169.5 (unless previously filed).

   a. State certified copy of corporate charter or articles of incorporation

   b. Certified copy of corporate resolution, by-laws, articles of partnership or association authorizing signatory to file the application.

We regret the confusion concerning the need for the Ak-Chin Chairperson's signature on the application. There is no need for an actual signature. On allotted land(s), a signature of consent is required by the landowner(s). Tribal consent for ROW is provided by an approved tribal resolution.

The ED3 ROW application was approved and picked up by Mr. Jim Hartegen on February 1, 2007. Since this is a one time payment, we advised ED3 to make the payment directly to the Ak-Chin Indian Community with instructions to send BIA, Realty a copy of their check stub and a copy of a signed billing notice that ED3 will receive in the mail that will say $0.00 due (because it was by direct payment) to establish that Ak-Chin was paid.

If you have any questions, or wish to discuss this matter further, please contact the Superintendent's office at (520) 562-3326.

Sincerely,

/S/ JAY DANIELS

ACTING Superintendent

Cc: ED3 of Pinal County, 41630 W. Louis Johnson, Drive, Maricopa, AZ 85239

Admin Chrono
Realty Chrono
File Copy-AKRW0107PT

02.02.07



**United States Department of the Interior**
BUREAU OF INDIAN AFFAIRS
PIMA AGENCY
P.O. BOX 8
SACATON, ARIZONA 85247

IN REPLY:
Branch of Real Estate Services
Telephone: 520/562-3376/3377
FAX Number: 520/562-1280

FEB 01 2007

Honorable Delia M. Carlyle
Chairperson-Ak-Chin Indian Community
42507 W. Peters & Nall Road
Maricopa, Arizona 85239

Dear Madam Chairperson Carlyle:

Enclosed is the approved Grant of Easement for Right of Way, file number AKRW0107PT, between Ak-Chin Indian Community and Electrical District 3 of Pinal County (Grantee).

Upon receiving the approved Grant of Easement, the Grantee will be submitting a direct payment of $96,872.55, paid to the Ak-Chin Indian Community. The Grantee has been advised to provide documents to the Bureau of Indian Affairs, that payment has been made.

Should you have any questions, please contact Ms. Cecilia Martinez, Superintendent, at (520) 562-3326 or Mr. Larry McKeighen, Acting Realty Officer, at telephone number (520) 562-3376.

Sincerely,

/S/ JAY DANIELS

ACTING Superintendent

Enclosure

Cc: Electrical District 3 of Pinal County, 41630 W. Louis Johnson Dr., Maricopa, AZ 85239



**United States Department of the Interior**
BUREAU OF INDIAN AFFAIRS
PIMA AGENCY
P.O. BOX 8
SACATON, ARIZONA 85247

IN REPLY:
Branch of Real Estate Services
Telephone: 520/562-3376/3377
FAX Number: 520/562-1280

FEB 0 1 2007

Mr. Jim Hartdegen
Electrical District 3 of Pinal County
41630 W. Louis Johnson Drive
Maricopa, Arizona 85239

Dear Mr. Hartdegen:

Enclosed is the approved Grant of Easement for Right of Way, file number AKRW0107PT, between Electrical District 3 of Pinal County, and the Ak-Chin Indian Community.

You will be receiving an invoice noting your payment is $0.00, please sign the invoice and return as indicated on the invoice. Although your payment is to be paid direct to the Ak-Chin Indian Community for the amount of $96,872.55, please furnish our office documents that this payment has been paid for our file.

Should you have any questions, please contact Ms. Cecilia Martinez, Superintendent at (520) 562-3326 or Mr. Larry McKeighen, Acting Realty Officer, at telephone number (520) 562-3376.

Sincerely,

/S/ JAY DANIELS

ACTING Superintendent

Enclosure

Cc: Ak-Chin Indian Community, 42507 W. Peters & Nall Rd., Maricopa, AZ 85239



United States Department of the Interior
BUREAU OF INDIAN AFFAIRS
PIMA AGENCY
Post Office Box 8 - Sacaton, Arizona 85247

IN REPLY REFER TO:

Real Estate Services
TEL.: (520) 562-3376/3377
FAX: (520) 562-1280

MAY 16 2005

Honorable Terry O. Enos
Chairman, Ak-Chin Indian Community
42507 W. Peters & Nall Road
Maricopa, Arizona 85239

Dear Chairman Enos:

This is in response to your request of May 5, 2005 for a Right-Of-Way Application concerning Westpac Development, Inc. developing a subdivision (Santa Cruz Ranch) on the southeast corner of the Ak-Chin Indian Reservation. The proposed project involves the realignment of approximately 3.23 miles of the Santa Cruz Wash in Sections 15, 22 and 26, Township 5 South, Range 4 East, Pinal County, Arizona, and that the realignment is needed to rectify potential flooding issues in the proposed Santa Cruz Ranch subdivision.

Enclosed is a copy of the Right-Of-Way Procedures with Right-Of-Way Application.

If there are any questions, please contact the undersigned at (520) 562-3326 or Julia A. Molina, Real Estate Services, at (520) 562-3376, or Peter Overton, Environmental Office, at (520) 562-.3326.

Sincerely,

Acting Superintendent

Enclosure

cc: **With copy of May 5, 2005 Letter, Resolution A-37-05 & January 12, 2004 M.O.U. to:**
Stan Webb, Realty Officer, Branch of Real Estate Services, Western Region
Cathy Wilson, Land & Water Resources Officer, Branch of Land & Water Resources, Western Region
Amy L. Heuslein, Environmental Protection Officer, Branch of Environmental Mgmt., Western Region
Peter Overton, Environmental Specialist, Pima Agency
Joe Revak, Supervisory Engineer, Branch of Natural Resources, Pima Agency
Department of Army, Corps of Engineer, AZ & NV Area Office, Attn: Cindy Lester, Chief of AZ Section, Regulatory Branch, 3636 North Central Avenue, Suite 900, Phoenix, AZ 85012-1939

# AK-CHIN INDIAN COMMUNITY

**Community Government**

42507 W. Peters & Nall Road • Maricopa, Arizona 85239 • Telephone: (520) 568-1000 • Fax: (520) 568-4566

RECEIVED BIA PIMA AGENCY 2005 MAY 10 P 4:50 SACATON, AZ

May 5, 2005

Benjamin H. Nuvamsa, Superintendent
Pima Agency
P.O Box 8
Sacaton, Arizona 85247

Dear Superintendent,

The Ak-Chin Indian Community and Westpac Development Inc., are requesting a Right-of Way Application. Westpac Development inc. is developing a subdivision (Santa Cruz Ranch) on the southeast corner of the reservation. The proposed project involves the realignment of approximately 3.23 miles of the Santa Cruz Wash in Section 15, 22, and 26, Township 05 South, and Range 04 East in Pinal County, Arizona. The realignment project is needed to rectify potential flooding issues in the proposed Santa Cruz Ranch subdivision.

Approximately 75 percent of the proposed 1,922-acre Santa Cruz Ranch development is in the 100-year floodplain of the Santa Cruz Wash. The Santa Cruz Wash currently does not have capacity to contain the 100-year flood event of approximately 12,600cfs. Westpac Development is proposing to contain the 100-year flood by canalizing over flow onto the AK-Chin Indian Community. The canalization shall lessen the impact in an event of the 100-year flood to the Santa Cruz Ranch and eliminate the 100-year floodplain from the Ak-Chin Indian Community. The Ak-Chin Indian Community has signed a Memorandum of Understanding Agreement (attachment A) with Westpac to start the process of applying for a 404 permit and BIA Right-of Way application.

Please submit a Right of Way Application to the following address 42507 W. Peters & Nall Road, Maricopa, Arizona 85239 attention Planning and Development Office. The Community looks forward to your response.

Sincerely,

Terry O. Enos, Chairman
Ak-Chin Indian Community Council

2005

**AK-CHIN INDIAN COMMUNITY COUNCIL**

42507 W. Peters & Nall Road
Maricopa, Arizona 85239
Telephone: (520) 568-1000

Resolution No. A-37-05

# RESOLUTION OF THE AK-CHIN INDIAN COMMUNITY COUNCIL

**A Resolution Requesting a BIA Right-of-Way Application Regarding Santa Cruz Wash, Ak-Chin Indian Reservation**

**WHEREAS,** the Ak-Chin Indian Community (the "Community") is a federally recognized Indian Tribe organized pursuant to the Indian Reorganization Act of 1934; and

**WHEREAS,** the Community is governed by the Ak-Chin Community Council (the "Council") pursuant to its Articles of Association (the "Articles") approved by the Secretary of the Interior December 20, 1961; and

**WHEREAS,** the Community and Westpac Development Corporation, Inc., ("Westpac"), as agent for Anderson and Val Vista 6, LLC and Santa Cruz Ranch, LLC (collectively, "Owners") have negotiated a Memorandum of Understanding respecting Owners' development of the proposed 1,922 acre Santa Cruz Ranch Project located between Murphy and Russell Roads and Val Vista and Miller Roads, a copy of which is attached hereto and made a part hereof as Exhibit "A"; and

**WHEREAS,** the Community has undertaken to cooperate with Westpac in requesting the Bureau of Indian Affairs ("BIA") and the Department of Interior to provide permanent maintenance easements to the Santa Cruz Project, allowing oversight of maintenance of a completed channel and the existing channel to carry out maintenance duties and functions; and

**WHEREAS,** the parties have determined that part of this process involves a request by the Community for a BIA Right of Way Application to and for the Santa Cruz Wash.

**NOW THEREFORE BE IT RESOLVED,** the Council does hereby authorize Ak-Chin Indian Community to enter into a request along with Westpac and related Owners, to the Bureau of Indian Affairs for a Right of Way Application to and for the Santa Cruz Wash; and

**NOW THEREFORE BE IT FURTHER RESOLVED,** that the Chair or Vice-Chair of the Community are hereby authorized to execute any documents necessary to complete the request for BIA Right of Way Application.

C-E-R-T-I-F-I-C-A-T-I-O-N

Pursuant to authority in Article VIII, Section 1(a), (b), (c), (d), and (m) of the Articles of Association of the Ak-Chin Indian Community, approved by the Secretary of the Interior on December 20, 1961, by a quorum of 4 members present at a Regular Council meeting held on May 4, 2005, at the Ak-Chin Reservation, Maricopa, Arizona, by a vote of 4 for, 0 against, 0 not voting, and 1 absent, the foregoing Resolution was adopted.

Terry O. Enos, Chairman
Ak-Chin Indian Community Council

ATTEST:

[illegible] Maldonado, Secretary
[illegible] Community Council

# MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding ("**MOU**") is entered into this 12 day of January, 2004, by and between Westpac Development Corporation, Inc. ("**Westpac**") as agent for Anderson & Val Vista 6 LLC and Santa Cruz Ranch LLC (collectively, "**Owners**"), the owners of the proposed 1922 acre Santa Cruz Ranch Project located between approximately Murphy and Russell Roads and Val Vista and Miller Roads, and the Ak-Chin Indian Community ("**Ak-Chin**"). The parties to this MOU acknowledge that its provisions pertaining to the subject matter hereof, except for Section 8 below, are not intended to be legally binding on either party and are merely a recital of the terms on which they have reached a mutual understanding and shall proceed in good faith to document and execute a formal definitive and binding Agreement between the Owners and the Ak-Chin within a timely manner. Section 8 below shall be legally binding when this MOU is signed by Ak-Chin. It is in good faith that Owner and Ak-Chin agree with the following recitals:

1. Owners would be required to cause the engineering firm of Coe & Van Loo Consultants, Inc. ("**CVL**") to cause the plans to be sealed by a registered Civil Engineer licensed by the State of Arizona and regulated by the State Board of Technical Registration. CVL's insurer shall name Ak-Chin as an additional insured under it General Liability Insurance Policy. CVL will maintain in force a two million dollar ($2,000,000) Professional Liability policy commonly referred to as "errors and omissions" insurance.

2. Owners will negotiate a maintenance agreement with an appropriately created and recognized Flood Control District, Special Purpose Association, County Special Taxing District, or other entity able to pay for and maintain flood control facilities of the new and existing channel on Ak-Chin land south of the Union Pacific Railroad tracks in the specific area to be identified on the final engineering plans.

   Ak-Chin will fully cooperate therewith and request the Secretary to provide a permanent maintenance easements to such entity, allowing the party selected to oversee the maintenance of a completed channel and the existing channel to have all necessary and reasonable access to the channel to carry out its maintenance duties and functions.

   Owner shall also negotiate an agreement with any existing entities which have assumed responsibility for the maintenance of any portion of Ak-Chin's flood control facilities.

3. Ak-Chin would not be obligated to pay for any costs of obtaining approved plans for this floodway channel project, including, but not limited to, the engineering, surveying, filing fees, and costs of obtaining Department of Interior (DOI) and/or Bureau of Indian Affairs (BIA) approval.

4. Ak-Chin will not be required to pay for any portion of the construction of this floodway channel project or for such modifications to the existing floodway channel as may be required by this floodway channel project.

5. In order to assure Ak-Chin that they will not be left with a partially constructed channel, Owners will agree to cause an irrevocable letter of credit to be issued in the amount of the cost to construct that portion of the floodway channel project on the Ak-Chin property and necessary to protect Ak-Chin from any flooding or any liability for flooding of adjacent properties which occupies land within the boundaries of the Ak-Chin community prior to commencement of construction (the "Irrevocable Letter of Credit"). Should the Owners decide not to renew the Irrevocable Letter of Credit thirty-days before its expiration date, the Irrevocable Letter of Credit can be reduced to cash by Ak-Chin. This Irrevocable Letter of Credit would be required to be issued at the time that construction permits are issued to start construction on the portion of the floodway channel project located on Ak-Chin land and the final agreement between the Parties would indicate under what specific circumstances Ak-Chin would have access to funds to be used to complete construction if same is not completed by Owners or any successor to any portion of the Santa Cruz project. Owners will also comply with all bonding, surety or other guarantees required by State of Arizona for obtaining and maintaining permit across the State lands involved in the project, and will furnish Ak-Chin with copies indicating their compliance with such requirements.

6. Owners would agree to take reasonable measures to mitigate adverse impacts on any adjacent land belonging to Ak-Chin Indian Community during the construction of the channel, including, without limitation, possible adverse impacts arising out of the construction process itself, for example, by trucks traveling over adjacent farm land. As an exhibit to the final agreement between the parties, and prior to construction of the channel, the Parties would be obligated to photograph, and/or videotape the condition of all potentially affected land areas to assist in later determining if any damage was caused to such land and improvements as a direct result of the construction activity.

7. Owners would agree to pay all costs of replanting any crops that are being cultivated at the time of this floodway channel construction and that may be displaced because of the channelization project in the areas of Ak-Chin land as would be shown in a map exhibit to be attached to the final agreement. Any such payments shall be made based upon the fair market value of the crops at the time of construction and would only be paid for crops that are actively being farmed at the commencement of construction. Further, the Owners agree to pay the actual costs of reconstituting any land that may be displaced because of the channelization project to another area of the Ak-Chin owned land as indicated specifically in a map exhibit attached to the final agreement between the parties.

8. Owners agree to reimburse Ak-Chin for the full costs of the legal fees Ak-Chin incurs from the inception of the discussions on April 30, 2004, until the signing of this Memorandum of Understanding. Such fees shall be reasonable and shall be repaid to Ak-Chin within 60 days of the signing of this MOU. No reimbursement shall be required if the Tribal Council does not approve of this MOU.

   Owners shall then reimburse Ak-Chin for the full costs of any reasonable legal fees incurred by Ak-Chin from the signing of this MOU until such time as the final agreement and approvals are granted for this project by the Department of Interior (DOI) every 30 days as requested. A rough estimate of ongoing legal fees shall be attached as an exhibit to the final agreement.

9. Owners and Ak-Chin would allow the Army Corps of Engineers to have an informal review of the project and the Army Corps of Engineers and the Bureau of Indian Affairs to undertake any legally applicable review as well.

10. Owners would agree that any homeowner who purchases in Santa Cruz Ranch shall be, at the time of purchasing a home, furnished with a disclosure explaining the presence and possible risk of over flight insecticide spraying in the general vicinity and shall be required to acknowledge this disclosed activity in writing. Such writing shall include a statement by which the homeowner acknowledges the spraying to be an activity pre-existing the homeowner's occupancy of the homeowner's property, and that the homeowner assumes the risk of any harm resulting from such activity so long as Ak-Chin remains in compliance with any State, Federal or Tribal law pertaining to the activity.

11. Ak-Chin shall grant Owners, and its representative agents, employees and contractors all reasonable access to the property within its boundaries commencing on the date this MOU is signed and continuing until completion of the floodway channel project, as well as any necessary temporary easements for construction of the channels. Owners shall give Ak-Chin 5 day's written notice prior to first entering upon the lands within the Ak-Chin boundaries, and shall otherwise comply in all respects with the requirements of Ak-Chin's Right-of-Entry permit system. Ak-Chin expressly acknowledges that a number of different persons and entities will need to have reasonable uninhibited access within the Ak-Chin boundaries to complete the project, including without limitation Owners, Westpac, their respective engineers, contractors, surveyors, and various government bodies, and Ak-Chin will allow such entities to travel upon and over its land in the course of completing the project.

12. The final definitive agreement incorporating these terms must be formalized by a Resolution of the Tribal Council and executed by the official tribal council representative. Ak-Chin agrees to fully cooperate in processing the application through the DOI and the BIA in a timely, professional manner, and a conceptual time line prepared by the owner and Ak-Chin shall be attached as an exhibit to this MOU shortly after its execution.

The definitive agreement would be made contingent upon the following occurrences:

- The State Land Department granting approval of the necessary easements for the construction and maintenance of a portion of the floodway channel project to be built across State Land;
- Westpac, on behalf of Owners, receiving zoning approval acceptable to Owners for the Santa Cruz Ranch project from all appropriate governing bodies;
- The floodway channel design and proposed maintenance arrangement must be approved by FEMA and the Corp of Engineers; and
- Owners agree that any reasonable legal fees called for under Paragraph 8 of this Agreement shall be paid so long as the MOU is approved by Tribal Council.

The parties hereto acknowledge that they have read the above provisions, understand and agree with the terms set forth above.

Westpac Development Corporation, Inc.

By: [signature]

Its: Executive Vice President

The Ak-Chin Indian Community

By: [signature]

Its: CHAIRMAN

Department of The Army
Corps of Engineer
Arizona and Nevada Area Office
**Attn:  Cindy Lester, Chief of Arizona Section,
        Regulatory Branch**

3636 North Central Avenue
Suite 900
Phoenix, Arizona  85012-1939



United States Department of the Interior
BUREAU OF INDIAN AFFAIRS
PIMA AGENCY
Post Office Box 8 – Sacaton, Arizona 85247

IN REPLY REFER TO:
Real Estate Services
(520) 562-3376/3377

RIGHT-OF-WAY PROCEDURES

A formal application for a right-of-way shall be filed with the Superintendent, Pima Agency, Attention: Real Estate Services. The application shall cite the statute under which it was filed, show the width, length and area for each type of land status, and accompanied by:

a. Written agreement to comply with all stipulations of 25 CFR 169.

b. Maps of definite location (two permanent reproducibles and four prints), with complete legal centerline description. Maps should show breakdown of length and area of each type of Indian land crossed: i.e., Tribal, allotted lands.

   There should be subscribed on the maps of definite location an affidavit executed by the engineer who made the survey, and a certificate executed by the applicant, both certifying to the accuracy of the survey and maps and both designating by termini and length of the line of route.

c. Appraisal report and deposit of right-of-way consideration, if not previously deposited. No waiver of payment required per 25 CFR 169.12-14 will be considered unless specifically requested in writing.

d. Allottees' written consent on Form 5-105b in the case of allotted land. Tribal resolution if tribal land.

   The applicant shall be responsible for obtaining the landowners' consents (signatures) prior to submission to Real Estate Services.

e. Archaelogical clearance.



f.  Environmental Assessment Report--a brief statement of the project (include pertinent data of facilities such as power line voltage, phase, type of poles; size and type of pipe lines whether buried or surface, etc.), location of project, terrain of land, type of vegetation, number of people to be served, any expected adverse effect on aesthetic value, wildlife, surface or subsurface water sources, any crossing of existing or other rights-of-way, and plans for restoration and/or reseeding of any disturbed surface (erosion control).

Copies of the applicable sections of 25 Code of Federal Regulations, Part 169, are included for your information.

If you have any questions, please call Real Estate Services at (520) 562-3376/3377.



RIGHT OF WAY PROCEDURES
Application for Right-of-Way
(25 CFR 169.5)

III. Right-of-Way Application

A. Functions at Agency Level:

1. Formal application shall be filed with the Superintendent, Pima Agency, Attention: Real Estate Services. The application shall cite the statute under which it was filed, show the width, length and area for each type of land status, and accompanied by:

a. Written agreement to comply with all stipulations of 25 CFR 169.

b. Maps of definite location (two permanent reproducibles and four prints), with complete legal centerline description. Maps should show breakdown of length and area of each type of Indian land crossed, i.e., tribal, allotted lands.

There should be subscribed on the maps of definite location, an affidavit executed by the engineer who made the survey, and a certificate executed by the applicant, both certifying to the accuracy of the survey and maps and both designating by termini and length of the line of route.

c. Appraisal report and deposit of right-of-way consideration, if not previously deposited. No waiver of payment required per 25 CFR 169.12-14 will be considered unless specifically requested in writing.

d. Allottee's written consent on Form F-104b in the case of allotted land.

e. Archeological clearance

f. Environmental Assessment Report—a brief statement of the project (include pertinent data of facilities such as power line voltage, phase, type of poles; size and type of pipelines whether buried or surface, etc.), location of project, terrain of land, type of vegetation, number of people to be served, any expected adverse effect on aesthetic value, wildlife, source or subsurface water sources, any crossing of existing or other rights-of-way, and plans for restoration and/or reseeding of any disturbed source (erosion control).

Formal environmental impact statement will be required on major projects.

IV.    Grant of Easement for Right-of-Way

    A.    Functions at the Agency level:

        1. Upon satisfactory compliance with all requirements, Real Estate Services will forward the right-of-way packet to the Superintendent for his review and approval.

        2. After approval, distribution of the Grant of Easement for Right-of-Way is made to the applicant.

        3. Distribution of the right-of-way consideration to the landowners involved will be made depending on the schedule of distribution of the lease distribution clerk.

        4. The Agency will forward the approved right-of-way documents to Land Titles and Records Office, Albuquerque, New Mexico for recording.

V.    Actions to complete Right-of-Way (25 CFR 169.16)

    A.    Upon completion of construction of right-of-way, applicant shall furnish Real Estate Services with Affidavit of Completion, in duplicate

    B.    Agency Real Estate Service will field inspect the site, and report any additional damages or failure of grantee to comply with easement stipulations. The Superintendent's recommendation for final clearance or further remedial action will be made.

    C.    Upon receipt of the written report of field inspection, distribution of the balance of the deposit will be made based on the report, and a letter written to applicant.

    B.    The affidavit of completion is forwarded to Land Titles and Records for recording.



The role of the Bureau of Indian Affairs is to review the completed rights-of-way documents, service line agreements and leases for conformance with existing laws and regulations.

Almost all land, both Indian and non-Indian, is served by roads, canals, transmission lines, as well as other services. Most of those services are services needed and used by Indian tribes and individual Indians. Many statutes have given the Secretary and others, duties and powers to grant rights-of-way through Indian lands. Specifically, the Act of February 5, 1948, is the statute we look to now to grant and process rights of way on Indian land. The 1948 Act authorizes the granting of rights of way for ALL purposes across both tribal and individual owned Indian land. The Secretary in granting rights of way has to have the consent of the tribe and/or the individual owners (under some circumstances it is not necessary to have 100% of individual owners). He is also authorized to determine the amount of just compensation. The regulations require that the consent of the tribes formed under the Indian Reorganization Act (May 1, 1936), and the Oklahoma Indian Welfare Act and all other tribes, which have tribal governing bodies, recognized by the Secretary. The only instance the Secretary can grant a right of way without the consent of a tribe across tribally owned land is if the tribe does not have a recognized governing body.

A "right-of-way" is primarily a privilege to pass over another's land, or a privilege which one person, or a particular description of persons, may have of passing over the land of another. It is nothing more than a special and limited right of use, which does not exist as a natural right, but which must be created by a grant or its equivalent.

The Bureau's responsibility in making grants of rights-of-way over Indian land stems from the United States Government's responsibilities as trustee for the land. Therefore, grants of rights-of-way shall be made in such a manner as to discharge properly the responsibilities and obligations of a trustee to the owner or owners of the land; that is, to assure that the rights of the owner or owners of the land are protected.

The regulations (25 CFR 169) are designed to give adequate latitude to act in the best interest of the owners in a wide variety of circumstances and situations, which arise at the Agency in connection with rights-of-way matters.

The Secretary may not grant a right-of-way or renewal for less than the appraisal fair market value, plus any severance damages, unless waived in writing by the landowners or their representatives. It should be noted that the consideration is stated is not les than the appraisal value, but this is not intended to limit or restrict the individual's or tribes in negotiating amounts in excess of the appraisal value. Likewise, the term "waived" as used extends to a waiver of all or part. The regulations give the authority, with the landowners consent, to waive all compensation, therefore, it is also implied that less than the total compensation may be waived, if such partial compensation and other considerations have been negotiated and together compensate the landowner for the taking. If all or part of the consideration is waived, reasons for doing so should be clearly stated.



Utilities

It is the responsibility of the prospective consumer (applicant) to request for power, telephone line, sewer, water or other services to their designated homesite.

The entity providing the services must then provide Real Estate Services with 1) Adequate description of the proposed project and sketch showing the general location of the route 2) Written consent of allotted landowners 3) Application for Right-of-Way 4) Environmental Assessment Report to determine whether or not an Environmental Impact Statement is required, and 5) An archaeological clearance might be necessary if the home site is located on historic properties.

A service line agreement is used for furnishing utility services across lands of the owner, authorized occupant or user for facilities within these lands. It does not include or extend to lands, which are not owned, or not under the authorized occupancy or use. The servicing entity furnishes Real Estate Services, Pima Agency, with an executed copy of the agreement with a plat or diagram showing the location, size, and extent of the line. These are filed with the Superintendent, Pima Agency, and do not need to be recorded with Land Titles and Records.

Ingress or Egress

The applicant is responsible for making sure the property has ingress and egress rights. The Bureau of Indian Affairs Branch of Roads will construct and maintain a road only if it on their road system or if the Gila River Indian Community requests that a road be placed on the BIA road system. The new criteria are that a road has to serve at least three (3) residences.

The Bureau of Indian Affairs must, as a legally responsible trustee protect the rights of owners of trust land. Formal right-of-way grants are therefore required in order to property occupy or use a right of way.

ILLUSTRATION # 1

APPLICATION FOR PERMISSION TO SURVEY FOR RIGHT-OF-WAY

________________________________________

________________________________________

________________________________________

having a residence or principal place of business at ________________ ________________ hereby files an application with the Bureau of Indian Affairs, pursuant to the terms and provisions of the Act of February 5, 1948 (62 Stat. 17; 25 U.S.C. 323), and to the regulations of the Department of the Interior contained in Title 25, Code of Federal Regulations, Part 169, for permission to survey a right-of-way for the following purposes and reasons:

Across the following described Indian land:

The applicant understands and hereby expressly agrees to indemnify the United States, the owners of the land, and occupants of the land, against liability for loss of lie, personal injury and property damage occurring because of survey activities and caused by the applicant, his employees, contractors and their employees, or subcontractors and their employees.

(7)

8

ILLUSTRATION #1

pg. 2

IN WITNESS WHERE OF, ______________________________ has caused this instrument to be executed this ________ day of ______________ 19 ___ .

______________________________ ______________________________

WITNESS APPLICANT

______________________________ ______________________________

WITNESS ______________________________

______________________________

SUPPORTING DOCUMENTS

( ) Written consent of the landowners.
( ) Evidence of good faith and financial responsibility.
( ) Double estimated damages.
( ) State certified corporate charger or articles of incorporation.
( ) Certified copy of resolution or bylows of the corporation authorizing the filing of the application.
( ) State certification that the applicant is authorized in the State where the land is located.
( ) Certified copy of the articles of partnership or association.
( ) Other.



ILLUSTRATION # 2

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS

STATEMENT OF LANDOWNERS TO ACCOMPANY APPLICATION
FOR PERMISSION TO MAKE SURVEY

Date ____________

Identification No. & Name ________________________________
(Allot. No., Name, Tribal Ref. No., etc.)

________________________________________________

________________________________________________

The undersigned owner(s) of said land hereby consent to the granting of permission to survey only. (It is understood that when the right-of-way location is definitely established that the applicant will submit formal application for a right-of-way in accordance with current laws and regulation.) This consent has been negotiated on the following terms and conditions: ________________________________

________________________________________________

________________________________________________

| Witnesses: | Owners: | Date Signed: |
|---|---|---|
| ____________ | ____________ | ________ |
| ____________ | ____________ | ________ |
| ____________ | ____________ | ________ |
| ____________ | ____________ | ________ |
| ____________ | ____________ | ________ |
| ____________ | ____________ | ________ |
| ____________ | ____________ | ________ |
| ____________ | ____________ | ________ |

(Use reverse side of this sheet if additional space is needed for the owner's signatures. If this consent involves Tribal land, it should be by resolution.)

# RIGHT-OF-WAY APPLICATION

COMES NOW THE APPLICANT ______________________________

of ______________________________ This ______ day

of ______________ 19 ____, who hereby petition(s) the Bureau of Indian Affairs and respectfully files under the terms and provisions of the Act of February 5, 1948 (62 Stat. 17; 25 U.S.C 323), and Code of Federal Regulations, 25 CFR 169, an application for a ______________ right-of-way for the following purposes and reasons:
(term of years)

Across the following described land (Easement description):

Said right-of-way to be ______________ in length, ______________ in width, and ______________ in size (or area), as shown on attached map of definite location.

SAID APPLICANT DOES HEREBY UNDERSTAND AND EXPRESSLY AGREE AS FOLLOWS:

(a) To construct and maintain the right-of-way in a workmanlike manner.
(b) To pay promptly all damages and compensation, in addition the deposit made pursuant to 169.4, determined by the Secretary to be due the landowners and authorized users and occupants of the land on account of the survey, granting, construction and maintenance of the right-of-way.
(c) To indemnify the landowners and authorized users and occupants against any liability for loss of life, personal injury and property damage arising from the construction, maintenance, occupancy or use of the lands by the applicant, his employees, contractors and their employees, or subcontractors and their employees.

(d) To restore the lands as nearly as may be possible to their original condition upon the completion of construction to the extent compatible with the purpose for which the right-of-way was granted.

(e) To clear and keep clear the lands within the right-of-way to the extent compatible with the purpose of the right-of-way; and dispose of all vegetative and other material cut, uprooted or otherwise accumulated during construction and maintenance of the project.

(f) To take soil and resources conservation protection measures, including weed control, on the land covered by the right-of-way.

(g) To do everything reasonably within its power to prevent and suppress fires on or near the lands to be occupied under the right-of-way.

(h) To build and repair such roads, fences and trails as may be destroyed or injured by construction work and to build and maintain necessary and suitable crossings for all roads and trails that intersect the works constructed, maintained or operated under the right-of-way.

(i) That upon revocation or termination of the right-of-way, the applicant shall, so far as is reasonably possible, restore the land to its original condition.

(j) To at all times keep the Secretary informed of its address, and in case of corporations, of the addresses of its principal officers.

(k) That the applicant will not interfere with the use of the lands by or under the authority of the landowners for any purpose and inconsistent with the primary purpose for which the right-of-way is granted.

SAID APPLICANT FURTHER STIPULATES AND EXPRESSLY AGREES AS FOLLOWS:

To conform and to abide by all applicable requirements with respect to the right-of-way herein applied for. Applicant agrees to conform to and abide by the rules, regulations, and requirements contained in Code of Federal Regulations, Title 25 Indians, Part 169, as amended, and by reference includes such rules, regulations and requirements as a part of this application to the same effect as if the same were herein set out in full.

________________________
Applicant

Dated: ______________

Attest: ______________



Form 5-104b
(Rev 6/73)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS

## STATEMENT OF OWNERS OF ALLOTTED INDIAN LANDS TO ACCOMPANY APPLICATION FOR RIGHT-OF-WAY

______________________ Agency, ______________________,

Allotment No. ______________ Allottee ______________________

Description ______________________________________________

__________________________________________________________

The undersigned owner(s) of said land, hereby give(s) permission to make surveys of (and consents to the granting of)* a right-of-way for ______________________ (state purpose) ______________________ as contemplated by the application of ______________________ (Name and Address) as shown on the attached map, on payment of $______________ and other good and valuable consideration.

Other terms or comments (if applicable): ______________________

__________________________________________________________

| Witnesses | Owners | Interest |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

*Strike out non-applicable items
(If more space if required, use back of this sheet or continuation sheet)

7

# UNITED STATES CODE ANNOTATED

## Title 25

## Indians

(13)

Pueblo lands as must also be the beneficiaries and wards. State of N. M. ex rel. State Highway Commission v. U. S., D.C.N.M.1957, 148 F.Supp. 508.

In proceeding to condemn for highway purposes lands of Pueblo Indians in New Mexico, United States must be joined as a defendant and a Federal district court is the proper forum to try and determine the respective rights of the parties. Id.

## § 323. Rights-of-way for all purposes across any Indian lands

The Secretary of the Interior be, and he is empowered to grant rights-of-way for all purposes, subject to such conditions as he may prescribe, over and across any lands now or hereafter held in trust by the United States for individual Indians or Indian tribes, communities, bands, or nations, or any lands now or hereafter owned, subject to restrictions against alienation, by individual Indians or Indian tribes, communities, bands, or nations, including the lands belonging to the Pueblo Indians in New Mexico, and any other lands heretofore or hereafter acquired or set aside for the use and benefit of the Indians. Feb. 5, 1948, c. 45, § 1, 62 Stat. 17.

### Historical Note

**Effective Date.** Section 7 of Act Feb. 5, 1948 provided that sections 323-328 shall not become operative until 30 days after Feb. 5, 1948.

**Legislative History:** For legislative history and purpose of Act Feb. 5, 1948, see 1948 U.S.Code Cong.Service, p. 1033.

### Notes of Decisions

**Library references**

Indians ⚖10.
United States ⚖40.
C.J.S. Indians §§ 19, 28 et seq.
C.J.S. United States §§ 38-40.

1. **Manner of acquisition**

Pueblo Indian lands may be acquired by condemnation proceedings, by negotiations with the Secretary of the Interior and by cooperation between the various heads of the executive department. State of N. M. ex rel. State Highway Commission v. U. S., D.C.N.M.1957, 148 F.Supp. 508.

## § 324. Same; consent of certain tribes; consent of individual Indians

No grant of a right-of-way over and across any lands belonging to a tribe organized under sections 461–473 and 474–479, of this title; section 473a of this title and sections 358a and 362 of Title 48; and sections 501–509 of this title, shall be made without the consent of the proper tribal officials. Rights-of-way over and across lands of individual Indians may be granted without the consent of the individual Indian owners if (1) the land is owned by more than one person, and the owners or owner of a majority of the interests therein consent to the grant; (2) the whereabouts of the owner of the land or an interest therein are unknown, and the owners or owner of any interests therein whose whereabouts are known, or a majority thereof, consent to the grant; (3) the heirs or devisees

(14)

of a deceased owner of the land or an interest therein have not been determined, and the Secretary of the Interior finds that the grant will cause no substantial injury to the land or any owner thereof; or (4) the owners of interests in the land are so numerous that the Secretary finds it would be impracticable to obtain their consent, and also finds that the grant will cause no substantial injury to the land or any owner thereof. Feb. 5, 1948, c. 45, § 2, 62 Stat. 18.

Library references: Indians ⚷10; C.J.S. Indians §§ 19, 28 et seq.

## § 325. Same; payment and disposition of compensation

No grant of a right-of-way shall be made without the payment of such compensation as the Secretary of the Interior shall determine to be just. The compensation received on behalf of the Indian owners shall be disposed of under rules and regulations to be prescribed by the Secretary of the Interior. Feb. 5, 1948, c. 45, § 3, 62 Stat. 18.

Library references: Indians ⚷10, 15(1); C.J.S. Indians §§ 19, 28 et seq., 53 et seq.

## § 326. Same; laws unaffected

Sections 323–328 of this title shall not in any manner amend or repeal the provisions of the Federal Water Power Act of June 10, 1920 (41 Stat. 1063), as amended by the Act of August 26, 1935 (49 Stat. 838), nor shall any existing statutory authority empowering the Secretary of the Interior to grant rights-of-way over Indian lands be repealed. Feb. 5, 1948, c. 45, § 4, 62 Stat. 18.

Library references: Indians ⚷10; Navigable Waters ⚷3; C.J.S. Indians §§ 19, 28 et seq.; C.J.S. Navigable Waters § 10 et seq.

### Historical Note

References in Text. The Federal Water Power Act of June 10, 1920 (41 Stat. 1063), as amended by the Act of August 26, 1935 (49 Stat. 838), referred to in the text, was redesignated as the Federal Power Act by section 791a of Title 16, Conservation, and is classified generally to chapter 12 of Title 16.

## § 327. Same; application for grant by department or agency

Rights-of-way for the use of the United States may be granted under sections 323–328 of this title upon application by the department or agency having jurisdiction over the activity for which the right-of-way is to be used. Feb. 5, 1948, c. 45, § 5, 62 Stat. 18.

Library references: Indians ⚷10; C.J.S. Indians §§ 19, 28 et seq.

## § 328. Same; rules and regulations

The Secretary of the Interior is authorized to prescribe any necessary regulations for the purpose of administering the provisions of sections 323–327 of this title. Feb. 5, 1948, c. 45, § 6, 62 Stat. 18.

Library references: United States ⚷41; C.J.S. United States § 41.



(1) If the Area Director and the Hopi Tribe concur on all or part of the proposed conservation practices in writing in a timely manner, those practices concurred upon may be immediately implemented.

(2) If the Hopi Tribe does not concur on all or part of the proposed conservation practices in a timely manner, the Area Director will submit in writing to the Hopi Tribe a declaration of nonconcurrence. The Area Director will then notify the Hopi Tribe in writing of a formal hearing to be held not sooner than 15 days from the date of the nonconcurrence declaration.

(i) The formal hearing on non-concurrence will permit the submission of written evidence and argument concerning the proposal. Minutes of the hearing will be taken. Following the hearing, the Area Director may amend, alter or otherwise change his proposed conservation practices. Except as provided in §168.17(d)(1) of this section, if following the hearing, the Area Director altered or amends portions of his proposed plan of action, he will submit those individual altered or amended portions of the plan to the Tribe in a timely manner for their concurrence.

(ii) In the event the Tribe fails or refuses to give its concurrence to the proposal at the hearing, then the implementation of such proposal may only be undertaken in those situations where the Area Director expressly determines in a written order, based upon findings of fact, that the proposed action is necessary to protect the rights and property of life tenants and/or persons awaiting relocation.

### § 168.18 Appeals.

Appeals from decisions issued under this part will be in accordance with procedures in 25 CFR part 2.

### § 168.19 Information collection.

The information collection requirement(s) contained in this regulation have been approved by the Office of Management and Budget under 44 U.S.C. 3501 et seq. and assigned clearance number 1076-0027. The information is being collected in order to ascertain eligibility for the issuance of a grazing permit. Response is mandatory in order to obtain a permit.

## PART 169—RIGHTS-OF-WAY OVER INDIAN LANDS

Sec.

169.1 Definitions.
169.2 Purpose and scope of regulations.
169.3 Consent of landowners to grants of right-of-way.
169.4 Permission to survey.
169.5 Application for right-of-way.
169.6 Maps.
169.7 Field notes.
169.8 Public survey.
169.9 Connection with natural objects.
169.10 Township and section lines.
169.11 Affidavit and certificate.
169.12 Consideration for right-of-way grants.
169.13 Other damages.
169.14 Deposit and disbursement of consideration and damages.
169.15 Action on application.
169.16 Affidavit of completion.
169.17 Change of location.
169.18 Tenure of approved right-of-way grants.
169.19 Renewal of right-of-way grants.
169.20 Termination of right-of-way grants.
169.21 Condemnation actions involving individually owned lands.
169.22 Service lines.
169.23 Railroads.
169.24 Railroads in Oklahoma.
169.25 Oil and gas pipelines.
169.26 Telephone and telegraph lines; radio, television, and other communications facilities.
169.27 Power projects.
169.28 Public highways.

AUTHORITY: 5 U.S.C. 301; 62 Stat. 17 (25 U.S.C. 323—328), and other acts cited in the text.

SOURCE: 33 FR 19803, Dec. 27, 1968, unless otherwise noted. Redesignated at 47 FR 13327, Mar. 30, 1982.

### § 169.1 Definitions.

As used in this part 169:

(a) *Secretary* means the Secretary of the Interior or his authorized representative acting under delegated authority. Before proceeding under these regulations anyone desiring a right-of-way should inquire at the Indian Agency, Area Field Office, or other office of the Bureau of Indian Affairs having immediate supervision over the lands involved to determine the identity of the authorized representative of the Secretary for the purposes of this part 169.

(b) *Individually owned land* means land or any interest therein held in

(16)

trust by the United States for the benefit of individual Indians and land or any interest therein held by individual Indians subject to Federal restrictions against alienation or encumbrance.

(c) *Tribe* means a tribe, band, nation, community, group or pueblo of Indians.

(d) *Tribal land* means land or any interest therein, title to which is held by the United States in trust for a tribe, or title to which is held by any tribe subject to Federal restrictions against alienation or encumbrance, and includes such land reserved for Indian Bureau administrative purposes. The term also includes lands held by the United States in trust for an Indian corporation chartered under section 17 of the Act of June 18, 1934 (48 Stat. 988; 25 U.S.C. 477).

(e) *Government owned land* means land owned by the United States and under the jurisdiction of the Secretary which was acquired or set aside for the use and benefit of Indians and not included in the definitions set out in paragraphs (b) and (d) of this section.

**§ 169.2 Purpose and scope of regulations.**

(a) Except as otherwise provided in § 1.2 of this chapter, the regulations in this part 169 prescribe the procedures, terms and conditions under which rights-of-way over and across tribal land, individually owned land and Government owned land may be granted.

(b) Appeals from administrative action taken under the regulations in this part 169 shall be made in accordance with part 2 of this chapter.

(c) The regulations contained in this part 169 do not cover the granting of rights-of-way upon tribal lands within a reservation for the purpose of constructing, operating, or maintaining dams, water conduits, reservoirs, powerhouses, transmission lines or other works which shall constitute a part of any project for which a license is required by the Federal Power Act. The Federal Power Act provides that any license which shall be issued to use tribal lands within a reservation shall be subject to and contain such conditions as the Secretary of the Interior shall deem necessary for the adequate protection and utilization of such lands. (16 U.S.C. 797(e)). In the case of tribal lands belonging to a tribe organized under the Act of June 18, 1934 (48 Stat. 984), the Federal Power Act requires that annual charges for the use of such tribal lands under any license issued by the Federal Power Commission shall be subject to the approval of the tribe (16 U.S.C. 803(e)).

**§ 169.3 Consent of landowners to grants of right-of-way.**

(a) No right-of-way shall be granted over and across any tribal land, nor shall any permission to survey be issued with respect to any such lands, without the prior written consent of the tribe.

(b) Except as provided in paragraph (c) of this section, no right-of-way shall be granted over and across any individually owned lands, nor shall any permission to survey be issued with respect to any such lands, without the prior written consent of the owner or owners of such lands and the approval of the Secretary.

(c) The Secretary may issue permission to survey with respect to, and he may grant rights-of-way over and across individually owned lands without the consent of the individual Indian owners when

(1) The individual owner of the land or of an interest therein is a minor or a person non compos mentis, and the Secretary finds that such grant will cause no substantial injury to the land or the owner, which cannot be adequately compensated for by monetary damages;

(2) The land is owned by more than one person, and the owners or owner of a majority of the interests therein consent to the grant;

(3) The whereabouts of the owner of the land or an interest therein are unknown, and the owners or owner of any interests therein whose whereabouts are known, or a majority thereof, consent to the grant;

(4) The heirs or devisees of a deceased owner of the land or an interest therein have not been determined, and the Secretary finds that the grant will cause no substantial injury to the land or any owner thereof;

(5) The owners of interests in the land are so numerous that the Secretary finds it would be impracticable

(17)

to obtain their consent, and also finds that the grant will cause no substantial injury to the land or any owner thereof.

[36 FR 14183, July 31, 1971. Redesignated at 47 FR 13327, Mar. 30, 1982]

**§ 169.4 Permission to survey.**

Anyone desiring to obtain permission to survey for a right-of-way across individually owned, tribal or Government owned land must file a written application therefor with the Secretary. The application shall adequately describe the proposed project, including the purpose and general location, and it shall be accompanied by the written consents required by §169.3, by satisfactory evidence of the good faith and financial responsibility of the applicant, and by a check or money order of sufficient amount to cover twice the estimated damages which may be sustained as a result of the survey. With the approval of the Secretary, a surety bond may be substituted in lieu of a check or money order accompanying an application, provided the company issuing the surety bond is licensed to do business in the State where the land to be surveyed is located. The application shall contain an agreement to indemnify the United States, the owners of the land, and occupants of the land, against liability for loss of life, personal injury and property damage occurring because of survey activities and caused by the applicant, his employees, contractors and their employees, or subcontractors and their employees. When the applicant is an agency or instrumentality of the Federal or a State Government and is prohibited by law from depositing estimated damages in advance or agreeing to indemnification, the requirement for such a deposit and indemnification may be waived providing the applicant agrees in writing to pay damages promptly when they are sustained. An application filed by a corporation must be accompanied by a copy of its charter or articles of incorporation duly certified by the proper State official of the State where the corporation was organized, and a certified copy of the resolution or bylaws of the corporation authorizing the filing of the application. When the land covered by the application is located in a State other than that in which the application was incorporated, it must also submit a certificate of the proper State official that the applicant is authorized to do business in the State where the land is located. An application filed by an unincorporated partnership or association must be accompanied by a certified copy of the articles of partnership or association, or if there be none, this fact must be stated over the signature of each member of the partnership or association. If the applicant has previously filed with the Secretary an application accompanied by the evidence required in this section, a reference to the date and place of such filing, accompanied by proof of current financial responsibility and good faith, will be sufficient. Upon receipt of an application made in compliance with the regulations of this part 169, the Secretary may grant the applicant written permission to survey.

**§ 169.5 Application for right-of-way.**

Written application identifying the specific use requested shall be filed in duplicate with the Secretary. The application shall cite the statute or statutes under which it is filed and the width and length of the desired right-of-way, and shall be accompanied by satisfactory evidence of the good faith and financial responsibility of the applicant. An application filed by a corporation must be accompanied by a copy of its charter or articles of incorporation duly certified by the proper State official of the State where the corporation was organized, and a certified copy of the resolution or bylaws of the corporation authorizing the filing of the application. When the land covered by the application is located in a State other than that in which the applicant was incorporated, it must also submit a certificate of the proper State official that the applicant is authorized to do business in the State where the land is located. An application filed by an unincorporated partnership or association must be accompanied be a certified copy of the articles of partnership or association, or if there be none, this fact must be stated over the signature of each member of the partnership or association. If the

(18)

applicant has previously filed with the Secretary an application accompanied by the evidence required by this section, a reference to the date and place of such filing will be sufficient. Except as otherwise provided in this section, the application shall be accompanied by a duly executed stipulation, in duplicate, expressly agreeing to the following:

(a) To construct and maintain the right-of-way in a workmanlike manner.

(b) To pay promptly all damages and compensation, in addition to the deposit made pursuant to §169.4, determined by the Secretary to be due the landowners and authorized users and occupants of the land on account of the survey, granting, construction and maintenance of the right-of-way.

(c) To indemnify the landowners and authorized users and occupants against any liability for loss of life, personal injury and property damage arising from the construction, maintenance, occupancy or use of the lands by the applicant, his employees, contractors and their employees, or subcontractors and their employees.

(d) To restore the lands as nearly as may be possible to their original condition upon the completion of construction to the extent compatible with the purpose for which the right-of-way was granted.

(e) To clear and keep clear the lands within the right-of-way to the extent compatible with the purpose of the right-of-way; and to dispose of all vegetative and other material cut, uprooted, or otherwise accumulated during the construction and maintenance of the project.

(f) To take soil and resource conservation and protection measures, including weed control, on the land covered by the right-of-way.

(g) To do everything reasonably within its power to prevent and suppress fires on or near the lands to be occupied under the right-of-way.

(h) To build and repair such roads, fences, and trails as may be destroyed or injured by construction work and to build and maintain necessary and suitable crossings for all roads and trails that intersect the works constructed, maintained, or operated under the right-of-way.

(i) That upon revocation or termination of the right-of-way, the applicant shall, so far as is reasonably possible, restore the land to its original condition.

(j) To at all times keep the Secretary informed of its address, and in case of corporations, of the address of its principal place of business and of the names and addresses of its principal officers.

(k) That the applicant will not interfere with the use of the lands by or under the authority of the landowners for any purpose not inconsistent with the primary purpose for which the right-of-way is granted.

When the applicant is the U.S. Government or a State Government or an instrumentality thereof and is prohibited by law from executing any of the above stipulations, the Secretary may waive the requirement that the applicant agree to any stipulations so prohibited.

[33 FR 19803, Dec. 27, 1968, as amended at 45 FR 45910, July 8, 1980. Redesignated at 47 FR 13327, Mar. 30, 1982]

### § 169.6 Maps.

(a) Each application for a right-of-way shall be accompanied by maps of definite location consisting of an original on tracing linen or other permanent and reproducible material and two reproductions thereof. The field notes shall accompany the application, as provided in §169.7. The width of the right-of-way shall be clearly shown on the maps.

(b) A separate map shall be filed for each section of 20 miles of right-of-way, but the map of the last section may include any excess of 10 miles or less.

(c) The scale of maps showing the line of route normally should be 2,000 feet to an inch. The maps may, however, be drawn to a larger scale when necessary and when an increase in scale cannot be avoided through the use of separate field notes, but the scale must not be increased to such extent as to make the maps too cumbersome for convenient handling and filing.

(d) The maps shall show the allotment number of each tract of allotted land, and shall clearly designate each tract of tribal land affected, together with the sections, townships, and

(19)

ranges in which the lands crossed by the right-of-way are situated.

### § 169.7 Field notes.

Field notes of the survey shall appear along the line indicating the right-of-way on the maps, unless the maps would be too crowded thereby to be easily legible, in which event the field notes may be filed separately on tracing linen in such form that they may be folded readily for filing. Where field notes are placed on separate tracing linen, it will be necessary to place on the maps only a sufficient number of station numbers so as to make it convenient to follow the field notes. The field notes shall be typewritten. Whether endorsed on the maps or filed separately, the field notes shall be sufficiently complete so as to permit the line indicating the right-of-way to be readily retraced on the ground from the notes. They shall show whether the line was run on true or magnetic bearings, and, in the latter case, the variation of the needle and date of determination must be stated. One or more bearings (or angular connections with public survey lines) must be given. The 10-mile sections must be indicated and numbered on all lines of road submitted.

### § 169.8 Public survey.

(a) The terminal of the line of route shall be fixed by reference of course and distance to the nearest existing corner of the public survey. The maps, as well as the engineer's affidavit and the certificate, shall show these connections.

(b) When either terminal of the line of route is upon unsurveyed land, it must be connected by traverse with an established corner of the public survey if not more than 6 miles distant from it, and the single bearing and distance from the terminal point to the corner computed and noted on the maps, in the engineer's affidavit, and in the certificate. The notes and all data for the computation of the traverse must be given.

### § 169.9 Connection with natural objects.

When the distance to an established corner of the public survey is more than 6 miles, this connection will be made with a natural object or a permanent monument which can be readily found and recognized, and which will fix and perpetuate the position of the terminal point. The maps must show the position of such mark, and course and distance to the terminus. There must be given an accurate description of the mark and full data concerning the traverse, and the engineer's affidavit and the certificate on the maps must state the connections.

### § 169.10 Township and section lines.

Whenever the line of survey crosses a township or section line of the public survey, the distance to the nearest existing corner shall be noted. The maps shall show these distances and the station numbers at the points of intersections. The field notes shall show these distances and the station numbers.

### § 169.11 Affidavit and certificate.

(a) There shall be subscribed on the maps of definite location an affidavit executed by the engineer who made the survey and a certificate executed by the applicant, both certifying to the accuracy of the survey and maps and both designating by termini and length in miles and decimals, the line of route for which the right-of-way application is made.

(b) Maps covering roads built by the Bureau of Indian Affairs which are to be transferred to a county or State government shall contain an affidavit as to the accuracy of the survey, executed by the Bureau highway engineer in charge of road construction, and a certificate by the State or county engineer or other authorized State or county officer accepting the right-of-way and stating that he is satisfied as to the accuracy of the survey and maps.

### § 169.12 Consideration for right-of-way grants.

Except when waived in writing by the landowners or their representatives as defined in § 169.3 and approved by the Secretary, the consideration for any right-of-way granted or renewed under this part 169 shall be not less than but not limited to the fair market value of the rights granted, plus severance damages, if any, to the remaining estate.



The Secretary shall obtain and advise the landowners of the appraisal information to assist them (the landowner or landowners) in negotiations for a right-of-way or renewal.

[45 FR 45910, July 8, 1980. Redesignated at 47 FR 13327, Mar. 30, 1982]

**§ 169.13 Other damages.**

In addition to the consideration for a grant of right-of-way provided for by the provisions of § 169.12, the applicant for a right-of-way will be required to pay all damages incident to the survey of the right-of-way or incident to the construction or maintenance of the facility for which the right-of-way is granted.

**§ 169.14 Deposit and disbursement of consideration and damages.**

At the time of filing an application for right-of-way, the applicant must deposit with the Secretary the total estimated consideration and damages, which shall include consideration for the right-of-way, severance damages, damages caused during the survey, and estimated damages to result from construction less any deposit previously made under § 169.4. In no case shall the amount deposited as consideration for the right-of-way over any parcel be less than the amount specified in the consent covering that parcel. If in reviewing the application, the Secretary determines that the amounts deposited are inadequate to compensate the owners, the applicant shall increase the deposit to an amount determined by the Secretary to be adequate. The amounts so deposited shall be held in a "special deposit" account for distribution to or for the account of the landowners and authorized users and occupants of the land. Amounts deposited to cover damages resulting from survey and construction may be disbursed after the damages have been sustained. Amounts deposited to cover consideration for the right-of-way and severance damages shall be disbursed upon the granting of the right-of-way. Any part of the deposit which is not required for disbursement as aforesaid shall be refunded to the applicant promptly following receipt of the affidavit of completion of construction filed pursuant to § 169.16.

**§ 169.15 Action on application.**

Upon satisfactory compliance with the regulations in this part 169, the Secretary is authorized to grant the right-of-way by issuance of a conveyance instrument in the form approved by the Secretary. Such instrument shall incorporate all conditions or restrictions set out in the consents obtained pursuant to § 169.3. A copy of such instrument shall be promptly delivered to the applicant and thereafter the applicant may proceed with the construction work. Maps of definite location may be attached to and incorporated into the conveyance document by reference. In the discretion of the Secretary, one conveyance document may be issued covering all of the tracts of land traversed by the right-of-way, or separate conveyances may be made covering one or several tracts included in the application. A duplicate original copy of the conveyance instrument, permanent and reproducible maps, a copy of the application and stipulations, together with any other pertinent documents shall be transmitted by the Secretary to the office of record for land documents affecting the land covered by the right-of-way, where they will be recorded and filed.

**§ 169.16 Affidavit of completion.**

Upon the completion of the construction of any right-of-way, the applicant shall promptly file with the Secretary an affidavit of completion, in duplicate, executed by the engineer and certified by the applicant. The Secretary shall transmit one copy of the affidavit to the office of record mentioned in § 169.15. Failure to file an affidavit in accordance with this section shall subject the right-of-way to cancellation in accordance with § 169.20.

**§ 169.17 Change of location.**

If any change from the location described in the conveyance instrument is found to be necessary on account of engineering difficulties or otherwise, amended maps and field notes of the new location shall be filed, and a right-of-way for such new route or location shall be subject to consent, approval, the ascertainment of damages, and the payment thereof, in all respects as in



the case of the original location. Before a revised conveyance instrument is issued, the applicant shall execute such instruments deemed necessary by the Secretary extinguishing the right-of-way at the original location. Such instruments shall be transmitted by the Secretary to the office of record mentioned in § 169.15 for recording and filing.

**§ 169.18 Tenure of approved right-of-way grants.**

All rights-of-way granted under the regulations in this part 169 shall be in the nature of easements for the periods stated in the conveyance instrument. Except as otherwise determined by the Secretary and stated in the conveyance instrument, rights-of-way granted under the Act of February 5, 1948 (62 Stat. 17; 25 U.S.C. 323-328), for railroads, telephone lines, telegraph lines, public roads and highways, access roads to homesite properties, public sanitary and storm sewer lines including sewage disposal and treatment plants, water control and use projects (including but not limited to dams, reservoirs, flowage easements, ditches, and canals), oil, gas, and public utility water pipelines (including pumping stations and appurtenant facilities), electric power projects, generating plants, switchyards, electric transmission and distribution lines (including poles, towers, and appurtenant facilities), and for service roads and trails essential to any of the aforestated use purposes, may be without limitation as to term of years; whereas, rights-of-way for all other purposes shall be for a period of not to exceed 50 years, as determined by the Secretary and stated in the conveyance instrument.

[37 FR 12937, June 30, 1972. Redesignated at 47 FR 13327, Mar. 30, 1982]

**§ 169.19 Renewal of right-of-way grants.**

On or before the expiration date of any right-of-way heretofore or hereafter granted for a limited term of years, an application may be submitted for a renewal of the grant. If the renewal involves no change in the location or status of the original right-of-way grant, the applicant may file with his application a certificate under oath setting out this fact, and the Secretary, with the consent required by § 169.3, may thereupon extend the grant for a like term of years, upon the payment of consideration as set forth in § 169.12. If any change in the size, type, or location of the right-of-way is involved, the application for renewal shall be treated and handled as in the case of an original application for a right-of-way.

**§ 169.20 Termination of right-of-way grants.**

All rights-of-way granted under the regulations in this part may be terminated in whole or in part upon 30 days written notice from the Secretary mailed to the grantee at its latest address furnished in accordance with § 169.5(j) for any of the following causes:

(a) Failure to comply with any term or condition of the grant or the applicable regulations;

(b) A nonuse of the right-of-way for a consecutive 2-year period for the purpose for which it was granted;

(c) An abandonment of the right-of-way.

If within the 30-day notice period the grantee fails to correct the basis for termination, the Secretary shall issue an appropriate instrument terminating the right-of-way. Such instrument shall be transmitted by the Secretary to the office of record mentioned in § 169.15 for recording and filing.

[33 FR 19803, Dec. 27, 1968, as amended at 45 FR 45910, July 8, 1980. Redesignated at 47 FR 13327, Mar. 30, 1982]

**§ 169.21 Condemnation actions involving individually owned lands.**

The facts relating to any condemnation action to obtain a right-of-way over individually owned lands shall be reported immediately by officials of the Bureau of Indian Affairs having knowledge of such facts to appropriate officials of the Interior Department so that action may be taken to safeguard the interests of the Indians.

**§ 169.22 Service lines.**

(a) An agreement shall be executed by and between the landowner or a legally authorized occupant or user of individually owned land and the applicant before any work by the applicant

may be undertaken to construct a service line across such land. Such a service line shall be limited in the case of power lines to a voltage of 14.5 kv. or less except lines to serve irrigation pumps and commercial and industrial uses which shall be limited to a voltage not to exceed 34.5 kv. A service line shall be for the sole purpose of supplying the individual owner or authorized occupant or user of land, including schools and churches, with telephone, water, electric power, gas, and other utilities for use by such owner, occupant, or user of the land on the premises.

(b) A similar agreement to that required in paragraph (a) of this section shall be executed by the tribe or legally authorized occupant or user of tribal land and the applicant before any work by the applicant may be undertaken for the construction of a service line across tribal land. A service line shall be for the sole purpose of supplying an occupant or user of tribal land with any of the utilities specified in paragraph (a) of this section. No agreement under this paragraph shall be valid unless its execution shall have been duly authorized in advance of construction by the governing body of the Indian tribe whose land is affected, unless the contract under which the occupant or user of the land obtained his rights specifically authorizes such occupant or user to enter into service agreements for utilities without further tribal consent.

(c) In order to encourage the use of telephone, water, electric power, gas and other utilities and to facilitate the extension of these modern conveniences to sparsely settled Indian areas without undue costs the agreement referred to in paragraph (a) of this section shall only be required to include or have appended thereto, a plat or diagram showing with particularity the location, size, and extent of the line. When the plat or diagram is placed on a separate sheet it shall bear the signature of the parties. In case of tribal land, the agreement shall be accompanied by a certified copy of the tribal authorization when required.

(d) An executed copy of the agreement, together with a plat or diagram, and in the case of tribal land, an authenticated copy of the tribal authorization, when required, shall be filed with the Secretary within 30 days after the date of its execution. Failure to meet this requirement may result in the removal of improvements placed on the land at the expense of the party responsible for the placing of such improvements and subject such party to the payment of damages caused by his unauthorized act.

### § 169.23 Railroads.

(a) The Act of March 2, 1899 (30 Stat. 990), as amended by the Acts of February 28, 1902 (32 Stat. 50), June 21, 1906 (34 Stat. 330), and June 25, 1910 (36 Stat. 859; 25 U.S.C. 312—318); the Act of March 3, 1875 (18 Stat. 482; 43 U.S.C. 934); and the Act of March 3, 1909 (35 Stat. 781), as amended by the Act of May 6, 1910 (36 Stat. 349; 25 U.S.C. 320), authorize grants of rights-of-way across tribal, individually owned and Government-owned land, except in the State of Oklahoma, for railroads, station buildings, depots, machine shops, side tracks, turnouts, and water stations; for reservoirs, material or ballast pits needed to the construction, repair, and maintenance of railroads; and for the planting and growing of trees to protect railroad lines. Rights-of-way granted under the above acts shall be subject to the provisions of this section as well as other pertinent sections of this part 169. Except when otherwise determined by the Secretary, rights-of-way for the above purposes granted under the Act of February 5, 1948 (62 Stat. 17; 25 U.S.C. 323-328), shall also be subject to the provisions of this section.

(b) Rights-of-way for railroads shall not exceed 50 feet in width on each side of the centerline of the road, except where there are heavy cuts and fills, when they shall not exceed 100 feet in width on each side of the road. The right-of-way may include grounds adjacent to the line for station buildings, depots, machine shops, side tracks, turnouts, and water stations, not to exceed 200 feet in width by a length of 3,000 feet, with no more than one station to be located within any one continuous length of 10 miles of road.

(c) Short spurs and branch lines may be shown on the map of the main line.

(23)

separately described by termini and length. Longer spurs and branch lines shall be shown on separate maps. Grounds desired for station purposes may be indicated on the map of definite location but separate plats must be filed for such grounds. The maps shall show any other line crossed, or with which connection is made. The station number shall be shown on the survey thereof at the point of intersection. All intersecting roads must be represented in ink of a different color from that used for the line for which application is made.

(d) Plats of railroad station grounds shall be drawn on a scale of 400 feet to an inch, and must be filed separately from the line of route. Such plats shall show enough of the line of route to indicate the position of the tract with reference thereto. Each station ground tract must be located with respect to the public survey as provided in § 169.8 and all buildings or other structures shall be platted on a scale sufficiently large to show clearly their dimensions and relative positions.

(e) If any proposed railroad is parallel to, and within 10 miles of, a railroad already built or in course of construction, it must be shown wherein the public interest will be promoted by the proposed road. Where the Interstate Commerce Commission has passed on this point, a certified copy of its findings must be filed with the application.

(f) The applicant must certify that the road is to be operated as a common carrier of passengers and freight.

(g) The applicant shall execute and file, in duplicate, a stipulation obligating the company to use all precautions possible to prevent forest fires and to suppress such fires when they occur, to construct and maintain passenger and freight stations for each Government townsite, and to permit the crossing, in a manner satisfactory to the Government officials in charge, of the right-of-way by canals, ditches, and other projects.

(h) A railroad company may apply for sufficient land for ballast or material pits, reservoirs, or tree planting to aid in the construction or maintenance of the road. The authority to use any land for such purposes shall terminate upon abandonment or upon failure to use the land for such purposes for a continuous period of 2 years.

**§ 169.24 Railroads in Oklahoma.**

(a) The Act of February 28, 1902 (32 Stat. 43), authorizes right-of-way grants across tribal and individually owned land in Oklahoma. Rights-of-way granted under that act shall be subject to the provisions of this section as well as other pertinent sections of this part 169. Except when otherwise determined by the Secretary, railroad rights-of-way in Oklahoma granted under the Act of February 5, 1948 (62 Stat. 17; 25 U.S.C. 323-328), shall also be subject to the provisions of this section.

(b) One copy on tracing linen of the map of definite location showing the line of route and all lands included within the right-of-way must be filed with the Secretary. When tribal lands are involved, a copy of the map must also be filed with the tribal council.

(c) Before any railroad may be constructed or any lands taken or condemned for any of the purposes set forth in section 13 of the Act of February 28, 1902 (32 Stat. 47), full damages shall be paid to the Indian owners.

(d) After the maps have been filed, the matter of damages shall be negotiated by the applicant directly with the Indian owners. If an amicable settlement cannot be reached, the amount to be paid as compensation and damages shall be fixed and determined as provided in the statute. If court proceedings are instituted, the facts shall be reported immediately as provided in § 169.21.

**§ 169.25 Oil and gas pipelines.**

(a) The Act of March 11, 1904 (33 Stat. 65), as amended by the Act of March 2, 1917 (39 Stat. 973; 25 U.S.C. 321), authorizes right-of-way grants for oil and gas pipelines across tribal, individually owned and Government-owned land. Rights-of-way granted under that act shall be subject to the provisions of this section as well as other pertinent sections of this part 169. Except when otherwise determined by the Secretary, rights-of-way granted for such purposes under the Act of February 5, 1948 (62 Stat. 17; 25 U.S.C. 323-328) shall also be



subject to the provisions of this section.

(b) Rights-of-way, granted under aforesaid Act of March 11, 1904, as amended, for oil and gas pipelines, pumping stations or tank sites shall not extend beyond a term of 20 years and may be extended for another period of not to exceed 20 years following the procedures set out in §169.19 of this part.

(c) All oil or gas pipelines, including connecting lines, shall be buried a sufficient depth below the surface of the land so as not to interfere with cultivation. Whenever the line is laid under a road or highway, the right-of-way for which has been granted under an approved application pursuant to an act of Congress, its construction shall be in compliance with the applicable Federal and State laws; during the period of construction, at least one-half the width of the road shall be kept open to travel; and, upon completion, the road or highway shall be restored to its original condition and all excavations shall be refilled. Whenever the line crosses a ravine, canyon, or waterway, it shall be laid below the bed thereof or upon such superstructure as will not interfere with the use of the surface.

(d) The size of the proposed pipeline must be shown in the application, on the maps, and in the engineer's affidavit and applicant's certificate. The application and maps shall specify whether the pipe is welded, screw-joint, dresser, or other type of coupling. Should the grantee of an approved right-of-way desire at any time to lay additional line or lines of pipe in the same trench, or to replace the original line with larger or smaller pipe, written permission must first be obtained from the Secretary and all damages to be sustained by the owners must be paid in advance in the amount fixed and determined by the Secretary.

(e) Applicants for oil or gas pipeline rights-of-way may apply for additional land for pumping stations or tank sites. The maps shall show clearly the location of all structures and the location of all lines connecting with the main line. Applicants for lands for pumping stations or tank sites shall execute and file a stipulation agreeing as follows:

(1) Upon abandonment of the right-of-way to level all dikes, fire-guards, and excavations and to remove all concrete masonry foundations, bases, and structural works and to restore the land as nearly as may be possible to its original condition.

(2) That a grant for pumping station or tank site purposes shall be subservient to the owner's right to remove or authorize the removal of oil, gas, or other mineral deposits; and that the structures for pumping station or tank site will be removed or relocated if necessary to avoid interference with the exploration for or recovery of oil, gas, or other minerals.

(f) Purely lateral lines connecting with oil or gas wells on restricted lands may be constructed upon filing with the Secretary a copy of the written consent of the Indian owners and a blueprint copy of a map showing the location of the lateral. Such lateral lines may be of any diameter or length, but must be limited to those used solely for the transportation of oil or gas from a single tract of tribal or individually owned land to another lateral or to a branch of the main line.

(g) The applicant, by accepting a pipeline right-of-way, thereby agrees that the books and records of the applicant shall be open to inspection by the Secretary at all reasonable times, in order to obtain information pertaining in any way to oil or gas produced from tribal or individually owned lands or other lands under the jurisdiction of the Secretary.

## § 169.26 Telephone and telegraph lines; radio, television, and other communications facilities.

(a) The Act of February 15, 1901 (31 Stat. 790), as amended by the Act of March 4, 1940 (54 Stat. 41; 43 U.S.C. 959); the Act of March 4, 1911 (36 Stat. 1253), as amended by the Act of May 27, 1952 (66 Stat. 95; 43 U.S.C. 961); and the Act of March 3, 1901 (31 Stat. 1083; 25 U.S.C. 319), authorize right-of-way grants across tribal, individually owned, and Government-owned land for telephone and telegraph lines and offices, for poles and lines for communication purposes, and for radio, television, and



other forms of communication transmitting, relay, and receiving structures and facilities. Rights-of-way granted under these acts shall be subject to the provisions of this section as well as other pertinent sections of this part 169. Except when otherwise determined by the Secretary, rights-of-way granted for such purposes under the Act of February 5, 1948 (62 Stat. 17; 25 U.S.C. 323—328); shall also be subject to the provisions of this section.

(b) A right-of-way granted under the said Act of March 4, 1911, as amended, shall be limited to a term not exceeding 50 years from the date of the issuance of such grant.

(c) No right-of-way shall be granted for a width in excess of 50 feet on each side of the centerline, unless special requirements are clearly set forth in the application which fully justify a width in excess of 50 feet on each side of the centerline.

(d) Applicants engaged in the general telephone and telegraph business may apply for additional land for office sites. The maps showing the location of proposed office sites shall be filed separately from those showing the line of route, and shall be drawn to a scale of 50 feet to an inch. Such maps shall show enough of the line of route to indicate the position of the tract with reference thereto. The tract shall be located with respect to the public survey as provided in §169.8, and all buildings or other structures shall be platted on a scale sufficiently large to show clearly their dimensions and relative positions.

(e) Rights-of-way for poles and lines for communication purposes, and for radio, television, and other forms of communication transmitting, relay, and receiving structures and facilities, shall be limited to 200 feet on each side of the centerline of such lines and poles; radio and television, and other forms of communication transmitting, relay, and receiving structures and facilities shall be limited to an area not to exceed 400 feet by 400 feet.

### §169.27 Power projects.

(a) The Act of March 4, 1911 (36 Stat. 1253), as amended by the Act of May 27, 1952 (66 Stat. 95; 43 U.S.C. 961), authorizes right-of-way grants across tribal, individually owned and Government-owned land for electrical poles and lines for the transmission and distribution of electrical power. Rights-of-way granted under that act shall be subject to the provisions of this section as well as other pertinent sections of this part 169. Except when otherwise determined by the Secretary, rights-of-way granted for such purposes under the Act of February 5, 1948 (62 Stat. 17; 25 U.S.C. 323—328) shall also be subject to the provisions of this section.

(b) All applications, other than those made by power-marketing agencies of the Department of the Interior, for authority to survey, locate, or commence construction work on any project for the generation of electric power, or the transmission or distribution of electrical power of 66 kV or higher involving Government-owned lands shall be referred to the Office of the Assistant Secretary of the Interior for Water and Power Resources or such other agency as may be designated for the area involved, for consideration of the relationship of the proposed project to the power development program of the United States. Where the proposed project will not conflict with the program of the United States, the Secretary, upon notification to the effect, may then proceed to act upon the application. In the case of necessary changes respecting the proposed location, construction, or utilization of the project in order to eliminate conflicts with the power development program of the United States, the Secretary shall obtain from the applicant written consent to or compliance with such requirements before taking further action on the application.

(c) A right-of-way granted under the said Act of March 4, 1911, as amended, shall be limited to a term not exceeding 50 years from the date of the issuance of such grant.

(d) Rights-of-way for power lines shall be limited to those widths which can be justified and in no event shall exceed a width of 200 feet on each side of the centerline.

(e) The applicant shall make provision, or bear the reasonable cost (as may be determined by the Secretary)

(26)

of making provision, for avoiding inductive interference between any project transmission line or other project works constructed, operated, or maintained by it on the right-of-way authorized under the grant and any radio installation, telephone line, or other communication facilities now or hereafter constructed and operated by the United States or any agency thereof. This provision shall not relieve the applicant from any responsibility or requirement which may be imposed by other lawful authority for avoiding or eliminating inductive interference.

(f) An applicant for a right-of-way for a transmission line across Government-owned lands having a voltage of 66 kV or more must, in addition to the stipulation required by §169.5, execute and file with its application a stipulation agreeing to accept the right-of-way grant subject to the following conditions:

(1) The applicant agrees that, in the event it becomes necessary for the United States to acquire the applicant's transmission line or facilities constructed on or across such right-of-way, the United States reserves the right to acquire such line or facilities at a sum to be determined upon by a representative of the applicant, a representative of the Secretary of the Interior, and a third representative to be selected by the other two for the purpose of determining the value of such property thus to be acquired by the United States.

(2) To allow the Department of the Interior to utilize for the transmission of electrical power any surplus capacity of the line in excess of the capacity needed by the holder of the grant for the transmission of electrical power in connection with the applicant's operations, or to increase the capacity of the line at the Department's expense and to utilize the increased capacity for the transmission of electrical power. Utilization by the Department of surplus or increased capacity shall be subject to the following terms and conditions:

(i) When the Department desires to utilize surplus capacity thought to exist in a line, notification will be given to the applicant and the applicant shall furnish to the Department within 30 days a certificate stating whether the line has any surplus capacity not needed by the applicant for the transmission of electrical power in connection with the applicant's operations, and, if so, the extent of such surplus capacity.

(ii) In order to utilize any surplus capacity certified by the applicant to be available, or any increased capacity provided by the Department at its own expense, the Department may interconnect its transmission facilities with the applicant's line in a manner conformable to approved standards of practice for the interconnection of transmission circuits.

(iii) The expense of interconnection will be borne by the Department, and the Department will at all times provide and maintain adequate switching, relaying, and protective equipment so as to insure that the normal and efficient operation of the applicant's line will not be impaired.

(iv) After any interconnection is completed, the applicant shall operate and maintain its line in good condition; and, except in emergencies, shall maintain in a closed position all connections under the applicant's control between the applicant's line and the interconnecting facilities provided by the Department.

(v) The interconnected power systems of the Department and the applicant will be operated in parallel.

(vi) The transmission of electrical power by the Department over the applicant's line will be effected in such manner and quantity as will not interfere unreasonably with the applicant's use and operation of the line in accordance with the applicant's normal operating standards, except that the Department shall have the exclusive right to utilize any increased capacity of the line which has been provided at the Department's expense.

(vii) The applicant will not be obligated to allow the transmission over its line by the Department of electrical power to any person receiving service from the applicant on the date of the filing of the application for a grant, other than persons entitled to statutory preference in connection with the distribution and sale of electrical power by the Department.



(viii) The Department will pay to the applicant an equitable share of the total monthly cost of maintaining and operating the part of the applicant's line utilized by the Department for the transmission of electrical power, the payment to be an amount in dollars representing the same proportion of the total monthly operation and maintenance cost of such part of the line as the maximum amount in kilowatts of the power transmitted on a scheduled basis by the Department over the applicant's line during the month bears to the total capacity in kilowatts of that part of the line. The total monthly cost may include interest and amortization, in accordance with the system of accounts prescribed by the Federal Power Commission, on the applicant's net total investment (exclusive of any investment by the Department) in the part of the line utilized by the Department.

(ix) If, at any time subsequent to a certification by the applicant that surplus capacity is available for utilization by the Department, the applicant needs for the transmission of electrical power in connection with its operations the whole or any part of the capacity of the line theretofore certified as being surplus to its needs, the applicant may modify or revoke the previous certification by giving the Secretary of the Interior 30 months' notice, in advance, of the applicant's intention in this respect. After the revocation of a certificate, the Department's utilization of the particular line will be limited to the increased capacity, if any, provided by the Department at its expense.

(x) If, during the existence of the grant, the applicant desires reciprocal accommodations for the transmission of electrical power over the interconnecting system of the Department to its line, such reciprocal accommodations will be accorded under terms and conditions similar to those prescribed in this paragraph with respect to the transmission by the Department of electrical power over the applicant's line.

(xi) The terms and conditions prescribed in this paragraph may be modified at any time by means of a supplemental agreement negotiated between the applicant and the Secretary of the Interior or his designee.

(g) Applicants may apply for additional lands for generating plants and appurtenant facilities. The lands desired for such purposes may be indicated on the maps showing the definite location of the right-of-way, but separate maps must be filed therefor. Such maps shall show enough of the line of route to indicate the position of the tract with respect to said line. The tract shall be located with respect to the public survey as provided in § 169.8, and all buildings or other structures shall be platted on a scale sufficiently large to show clearly their dimensions and relative positions.

[33 FR 19803, Dec. 27, 1968, as amended at 38 FR 14680, June 4, 1973. Redesignated at 47 FR 13327, Mar. 30, 1982]

### § 169.28 Public highways.

(a) The appropriate State or local authorities may apply under the regulations in this part 169 for authority to open public highways across tribal and individually owned lands in accordance with State laws, as authorized by the Act of March 3, 1901 (31 Stat. 1084; 25 U.S.C. 311).

(b) In lieu of making application under the regulations in this part 169, the appropriate State or local authorities in Nebraska or Montana may, upon compliance with the requirements of the Act of March 4, 1915 (38 Stat. 1188), lay out and open public highways in accordance with the respective laws of those States. Under the provisions of that act, the applicant must serve the Secretary with notice of intention to open the proposed road and must submit a map of definite location on tracing linen showing the width of the proposed road for the approval of the Secretary prior to the laying out and opening of the road.

(c) Applications for public highway rights-of-way over and across roadless and wild areas shall be considered in accordance with the regulations contained in part 265 of this chapter.



# PART 170—ROADS OF THE BUREAU OF INDIAN AFFAIRS

CONSTRUCTION AND MAINTENANCE OF ROADS

Sec.
170.1 Purpose.
170.2 Definitions.
170.3 Construction and improvement.
170.4 Approval of road construction activities.
170.4a Selection of road construction projects.
170.4b What formula will BIA use to distribute $25 million of fiscal year 2003 Indian Reservation Roads Program funds?
170.5 Right-of-way.
170.5a Employment of Indians.
170.6 Maintenance of Indian roads.
170.6a Contributions from tribes.
170.7 Cooperation with States.
170.8 Use of roads.
170.9 Roadless and wild areas.

PUBLIC HEARINGS ON ROAD PROJECTS

170.10 Purpose and objectives.
170.11 Criteria.
170.12 Need for public hearing determined.
170.13 Notice of road construction projects.
170.14 Notice of public hearing.
170.15 Record of hearing proceedings.
170.16 Conducting the public hearing.
170.17 Written statements.
170.18 Hearing statement.
170.19 Appeals.

AUTHORITY: 36 Stat. 861; 78 Stat. 241, 253, 257; 45 Stat. 750 (25 U.S.C. 47; 42 U.S.C. 2000e(b), 2000e-2(i); 23 U.S.C. 101(a), 204, 308), unless otherwise noted.

SOURCE: Sections 170.1 to 170.9, 39 FR 27132, July 25, 1974, unless otherwise noted. Redesignated at 47 FR 13327, Mar. 30, 1982.

## CONSTRUCTION AND MAINTENANCE OF ROADS

### § 170.1 Purpose.

The regulations in this part govern the planning, design, construction, maintenance and general administration of certain Indian reservation roads and bridges.

### § 170.2 Definitions.

As used in this part:

(a) *Commissioner* means the Commissioner of Indian Affairs.

(b) *Superintendent* means the Agency Superintendent at all locations, with the exception that at the Navajo Reservation this term shall mean the Area Director or his designated representative for public hearings on arterial roads which cross Agency boundaries of jurisdiction.

(c) *State* means a State or territory or political subdivision thereof.

(d) *Indian Reservation Roads and Bridges* means roads and bridges that are located within or provide access to an Indian reservation or Indian trust land or restricted Indian land which is not subject to fee title alienation without the approval of the Federal Government, or Indian and Alaska Native villages, groups or communities in which Indians and Alaskan Natives reside, whom the Commissioner has determined are eligible for services generally available to Indians under Federal laws specifically applicable to Indians. (23 U.S.C. 101(a))

(e) *Indian and Alaskan Native villages, groups, or communities in which Indian or Alaska Natives reside* means villages, groups or communities or portions of villages, groups, or communities in which the majority of the residents are Indians or Alaska Natives.

(f) *Federal-Aid Indian Road System* means those Indian reservation roads and bridges for which financial aid for construction is available only from specific appropriations of Federal funds therefor and which are designated by the Bureau of Indian Affairs and the Federal Highway Administration. This term does not include roads or bridges on Indian reservations for which financial aid for construction and improvement is available to a State under the Federal-Aid Highway Act. (45 Stat. 750)

(g) *Construction* means supervising, inspecting, actual building, and all expenses incidental to the construction and improvement of roads and bridges including the elimination of roadway hazards and the acquisition of rights-of-way.

(h) *Maintenance* means the act of preserving the entire roadway, including surface, shoulders, roadsides, structures, and the necessary traffic control devices as nearly as possible in the as-built condition and to provide services for the satisfactory and safe use of such roads.

### § 170.3 Construction and improvement.

Subject to the availability of appropriations for Indian reservation roads and bridges and any other contribution

(29)

of State or Indian tribal lands, the Commissioner shall plan, survey, design and construct roads on the Federal-Aid Indian Road System to provide an adequate system of road facilities serving Indian lands.

§ 170.4 Approval of road construction activities.

The Secretary of Transportation or his authorized representative shall approve the location, type, and design of all projects on the Federal-Aid Indian Road System before any construction expenditures are made. All such construction shall be under the general supervision of the Secretary of Transportation or his authorized representative.

(23 U.S.C. 208)

§ 170.4a Selection of road construction projects.

The Commissioner, who is responsible for the planning, surveys and design, shall keep the appropriate local tribal officials informed of all technical information relating to the project alternatives of proposed road developments. The Commissioner shall recommend to the tribe those proposed road projects having the greatest need as determined by the comprehensive transportation analysis. Tribes shall then establish annual priorities for road construction projects. Subject to the approval of the Commissioner, the annual selection of road projects for construction shall be performed by tribes. Funds available for the construction of roads on the Federal-Aid Indian Road System shall not be used for the capital improvement to privately-owned property. (39 Stat. 355)

§ 170.4b What formula will BIA use to distribute $25 million of fiscal year 2003 Indian Reservation Roads Program funds?

On January 13, 2003 we will distribute $25 million of fiscal year 2003 IRR Program funds authorized under Section 1115 of the Transportation Equity Act for the 21st Century, Public Law 105–178, 112 Stat. 154. We will distribute the funds to Indian Reservation Roads projects on or near Indian reservations using the relative need formula established and approved in January 1993. The formula has been modified to account for non-reporting States by inserting the latest data reported for those states for use in the relative need formula process.

[68 FR 1005, Jan. 8, 2003]

EFFECTIVE DATE NOTE: At 68 FR 1005, Jan. 8, 2003, § 170.4b was added, effective Jan. 13, 2003 through Sept. 30, 2003.

§ 170.5 Right-of-way.

(a) The procedure for obtaining permission to survey and for granting any necessary right-of-way are governed by part 169 of this chapter. Tribal consent as required under § 169.3(a) may be made by public dedication where proper tribal authority exists. Before any work is undertaken for the construction of road projects, the Commissioner shall obtain the written consent of the Indian landowners. Where an Indian has an interest in tribal land by virtue of a land use assignment, such consent shall be obtained from both the landholder of the assignment and the Indian tribe. Right-of-way easements are to be on a form approved by the Commissioner.

(b) If it appears that the road might be transferred to the tribe, the county or the State within 10 years, then before such construction is undertaken, right-of-way easements for the project shall be obtained in favor of the United States, its successors and assigns, with the right to construct, maintain, and repair improvements thereon and thereover, for such purposes and with the further right in the United States, its successors and assigns, to transfer the right-of-way easements by assignment, grant or otherwise.

§ 170.5a Employment of Indians.

The Bureau of Indian Affairs road program shall be administered in such a way as to provide training and employment of Indians. The Commissioner may contract with tribes and Indian-owned construction companies, or the Commissioner may purchase materials, obtain equipment and employ Indian labor in the construction and maintenance of roads.

(36 Stat. 861; 78 Stat. 241, 253; 78 Stat. 257; 25 U.S.C. 47; 42 U.S.C. 2000e(b), 2000e-2(i); 23 U.S.C. 208(c))

(30)

**§ 170.6 Maintenance of Indian roads.**

The administration and maintenance of Indian reservation roads and bridges is basically a function of the local Government. Subject to the availability of funds, the Commissioner shall maintain, or cause to be maintained, those approved roads on the Federal-Aid Indian Road System. The Commissioner may also maintain roads not on the Federal-Aid Indian Road System if such roads meet the definition of "Indian reservation road and bridges" and are approved for maintenance by the Commissioner. No funds authorized under 23 U.S.C. 208 are available for the maintenance of roads.

**§ 170.6a Contributions from tribes.**

The Commissioner may enter into agreements with an Indian tribe for a contribution from its tribal funds for the construction or maintenance of roads governed by regulations of this part. However, the tribe must be able to make such contributions without undue impairment of the necessary tribal functions.

**§ 170.7 Cooperation with States.**

The Commissioner may enter into an agreement with the State for cooperation in the construction and the maintenance of certain Indian reservation roads and bridges, especially at those locations where road projects serve non-Indian land as well as Indian land.

(23 U.S.C. 208(d); 23 U.S.C.308(a))

**§ 170.8 Use of roads.**

(a) Free public use is required on roads eligible for construction and maintenance with Federal funds under this part. When required for public safety, fire prevention or suppression, or fish or game protection, or to prevent damage to unstable roadbed, the Commissioner may restrict the use of them or may close them to public use.

(b) The Commissioner shall conduct engineering and traffic analysis in accordance with established traffic engineering practices and determine the necessary maximum speed limit, maximum vehicular weight limit and other needed regulatory signs for roads which he maintains. The Commissioner shall make recommendations to local Government officials, who are authorized to enact and enforce ordinances on Indian lands, of his determination of the needed regulatory signs. Such regulatory signs as are authorized by established ordinances shall be erected by the Commissioner. At locations under the jurisdiction of the Court of Indian Offenses the Commissioner shall erect such regulatory signs as he determines are needed.

**§ 170.9 Roadless and wild areas.**

Roads passable to motor transportation shall not be constructed under the regulations in this part within the boundaries of the roadless and wild areas established in part 265 of this chapter.

PUBLIC HEARINGS ON ROAD PROJECTS

AUTHORITY: 45 Stat. 750; 25 U.S.C. 318a. Interpret or apply sec. 6, 49 Stat. 1521, as amended; 25 U.S.C. 318b.

SOURCE: Sections 170.10 to 170.19, 39 FR 12731, Apr. 8, 1974, unless otherwise noted. Redesignated at 47 FR 13327, Mar. 30, 1982.

**§ 170.10 Purpose and objectives.**

The regulations in this subpart govern the calling and conducting of public hearings on Bureau of Indian Affairs road projects beginning with road projects scheduled to begin construction in Fiscal Year 1975, and thereafter. In order to promote coordination and comprehensive planning of construction activities on Indian reservations, the objectives for conducting public hearings on proposed road projects are to:

(a) Inform interested persons of the road proposals which affect them and allow such persons to express their views at those stages of a project's development when the flexibility to respond to these views still exists.

(b) Insure that road locations and designs are consistent with the reservations' objectives and with applicable Federal regulations.

**§ 170.11 Criteria.**

A public hearing shall be held for each project that:

(a) Is a new route being constructed,

(31)

(b) Would significantly change the layout or function of connecting or related roads or streets,

(c) Would have an adverse effect upon adjacent real property, or

(d) Is expected to be of a controversial nature.

**§ 170.12 Need for public hearing determined.**

The Superintendent will call a meeting of representatives from the tribe, the Bureau of Indian Affairs, and other appropriate agencies to determine for each road project if a public hearing is needed. The determination will be based on the criteria given in § 170.11. More than one public hearing may be held for a project if necessary.

**§ 170.13 Notice of road construction projects.**

When no public hearing is scheduled for a road construction project, notice of the road construction project must be given at least 90 days before the date construction is scheduled to begin. Such notice should give the project name and location, the type of improvement planned, the date construction is scheduled to start, and the name and address of the office where more information can be obtained. The notice should be posted or published as determined by the Superintendent.

**§ 170.14 Notice of public hearing.**

Notice will be given to inform the local public of the scheduled hearing. The notice should give the date, time, and place of the scheduled hearing; the project location; the proposed work to be done; the place where the preliminary plans may be reviewed; and the place where more information on the project can be obtained. The notice should be posted or published as determined by the Superintendent. Notice should be given at least 15 days before the scheduled date of the public hearing and again, at least 5 days before the hearing date.

**§ 170.15 Record of hearing proceedings.**

A record of the hearing shall be made. The record shall include written statements submitted at the hearing or within 5 days following the hearing.

**§ 170.16 Conducting the public hearing.**

(a) The Superintendent will appoint a tribal or Bureau of Indian Affairs official to preside at the public hearing and to maintain a medium for free and open discussion designed to reach early and amicable resolution of issues.

(b) The Superintendent shall be responsible for maintaining a record of the hearing and shall make arrangements for appropriate officials to be present at the hearing to be responsive to questions which may arise.

(c) The purpose of the hearing and an agenda of items to be discussed should be presented at the beginning of the hearing. It should be made clear at the hearing that the tribal chairman or his designated roads committee are the officials responsible for setting reservation road priorities and considering the merits of one road project over another. Sufficient maps and project plans will be available at the hearing for public review. The hearing audience should be informed of the Bureau's road construction and right-of-way acquisition procedures on reservations. If the project will require relocating residences or businesses, information on relocation services and authorized payments will be given.

**§ 170.17 Written statements.**

Written statements may be submitted as well as oral statements made at the public hearing. Written statements may also be submitted during the 5 days following the hearing.

**§ 170.18 Hearing statement.**

If significant issues develop at the public hearing which remain unresolved, the Superintendent will issue a hearing statement summarizing the results of the public hearing and his determination as to the further action to be taken in connection with the proposed project. The hearing statement shall be issued within 20 days of the date of the public hearing. The hearing statement will be posted at the place where the hearing was held, and shall be sent to interested persons upon request. The hearing statement will outline procedures whereby the determination may be appealed.

(32)

**§170.19 Appeals.**

Any determination concerning the proposed road project may be appealed in accordance with the procedures set forth in part 2 of this title.

## PART 171—OPERATION AND MAINTENANCE

Sec.
171.1 Administration.
171.2 Irrigation season.
171.3 Domestic and stock water.
171.4 Farm units.
171.5 Delivery points.
171.6 Distribution and apportionment of water.
171.7 Application for and record of deliveries of irrigation water.
171.8 Surface drainage.
171.9 Structures.
171.10 Fencing.
171.11 Obstructions.
171.12 Rights-of-way.
171.13 Crops and statistical reports.
171.14 Carriage agreements and water right applications.
171.15 Leaching water.
171.16 Excess water.
171.17 Delivery of water.
171.18 Service or farm ditches.
171.19 Operation and maintenance assessments.
171.20 Water users' ledgers.
171.21 Health and sanitation.
171.22 Complaints.
171.23 Disputes.

AUTHORITY: Secs. 1, 3, 36 Stat. 270, 272, as amended; 25 U.S.C. 385. Sec. 171.4(b) also issued under 34 Stat. 1024, 38 Stat. 583, and 68 Stat. 1026. Secs. 171.4(a), 171.4(c), 171.16(b), and 171.17(f) also issued under sec. 11, 39 Stat. 142.

SOURCE: 42 FR 30362, June 14, 1977, unless otherwise noted. Redesignated at 47 FR 13327, Mar. 30, 1982.

**§171.1 Administration.**

(a) The Agency Superintendent, Project Engineer or such official as authorized by the Area Director is the Officer-in-Charge of those Indian Irrigation Projects or units operated or subject to administration by the Bureau of Indian Affairs, whether or not each project or unit is specifically mentioned in this part. The Officer-in-Charge is fully authorized to administer, carry out, and enforce these regulations either directly or through employees designated by him. Such enforcement includes the refusal to deliver water.

(b) The Officer-in-Charge is authorized to apply to irrigation subsistence units or garden tracts only those regulations in this part which in his judgment would be applicable in view of the size of the units and the circumstances under which they are operated.

(c) The Officer-in-Charge is responsible for performing such work and taking any action which in his judgment is necessary for the proper operation, maintenance and administration of the irrigation project or unit. In making such judgments, the Officer-in-Charge consults with water users and their representatives, and with tribal council representatives, and seeks advice on matters of program priorities and operational policies. The Officer-in-Charge will be guided by the basic requirement that the operation will be so administered as to provide the maximum possible benefits from the project's or unit's constructed facilities. The operations will insure safe, economical, beneficial, and equitable use of the water supply and optimum water conservation.

(d) The Secretary of the Interior reserves the right to exercise at any time all rights, powers, and privileges given him by law, and contracts with irrigation districts within Indian Irrigation Projects. Close cooperation between the Indian tribal councils, the project water users and the Officer-in-Charge is necessary and will be to the advantage of the entire project.

(e) The Area Director, or his delegated representative, is authorized to fix as well as to announce, by notice published in the FEDERAL REGISTER, the annual operation and maintenance assessment rates for the irrigation projects or units within his area of responsibility. In addition to the rates, the notices will include such information as is pertinent to the assessment, payment, and collections of the charges including penalties and duty of water.

(f) The rates will be based on a carefully prepared estimate of the cost of the normal operation and maintenance of the project. Normal operation and maintenance is defined for this purpose

33